| | |
|---|---|
| Samuel David Moore (professionally known as The Legendary Soul Man Sam Moore); Joyce Ellen Moore; and The SJM Trust,   )<br>)<br>)<br>)<br>)<br>Plaintiffs,   )<br>)<br>v.   )<br>)<br>The Weinstein Company LLC, d/b/a Dimension Films; MGM Studios, Inc.; Genius Products, LLC.; Concord Music Group, Inc. Harvey Weinstein; and Bob Weinstein.   )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendants.   ) | **CIVIL ACTION No.**<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiffs, Samuel David Moore (professionally known as The Legendary Soul Man Sam Moore) ("Sam Moore" or "Sam"), Joyce Ellen Moore ("Joyce Moore") and The SJM Trust, an Irrevocable Tennessee Trust ("The SJM Trust") (collectively, "Plaintiffs"), bring this complaint in the United States District Court for the Middle District of Tennessee against The Weinstein Company, d/b/a Dimension Films ("TWC"), MGM Studios, Inc. ("MGM"), Genius Products LLC ("Genius Products"), Concord Music Group, Inc. ("Concord"), and Harvey Weinstein and Bob Weinstein in their individual capacities (together the "Weinsteins"), (collectively the "Defendants"), alleging as follows:

## NATURE OF THE CASE

1.     Plaintiff Sam Moore is an internationally renowned entertainer, and the sole survivor of the acclaimed 60's duo, "Sam & Dave." Plaintiff Joyce Moore is Sam Moore's wife, personal manager, and co-owner of the rights referenced herein. Plaintiff SJM Trust is a Tennessee Irrevocable Trust, whose grantors are Sam and Joyce Moore and whose manager is Joyce Moore. SJM Trust is the ultimate beneficiary of the trademarks and the rights that flow through and from the Moores.

2.     Defendant TWC, d/b/a Dimension Films, is the copyright owner of the motion picture, *Soul Men* (the "Movie"). Defendant MGM is the distributor of the theatrically-released version of the Movie. Genius Products is the distributor of the Blu-Ray and DVD versions of the Movie (collectively "Genius Products DVDs"). Defendant Concord, through its Stax Record label, acquired in 2005, is the producer and distributor of the Movie's original soundtrack ("Concord's Stax Soundtrack"). The Defendants Harvey Weinstein and Bob Weinstein are the Executive Producers of the Movie.

3.     The Defendants' activities described in this Complaint violate the Tennessee Code, Tennessee common law and the Lanham Act by infringing Sam Moore's rights of publicity and privacy, misappropriating and diluting the Plaintiffs' famous trademarks, tarnishing Sam Moore's reputation and otherwise engaging in unfair competition. The Plaintiffs seek equitable relief and monetary damages for these actions.

4.     From 1961-1971, Sam Moore and his singing partner, Dave Prater, Jr. ("Dave" or "Dave Prater"), achieved international renown as the era's most successful soul and R & B duo ("Sam & Dave" or the "Duo"), who introduced and performed some of the greatest songs of the era, including *Soul Man, Hold On I'm Comin,' I Thank You*

and *When Something Is Wrong With My Baby*. The Duo developed a combination of performance style, clothing style, lifestyle, musical repertoire, physical mannerisms and personal catchphrases, the combination of which elements became integral to the professional act and identity of the "Sam & Dave" survivor, Sam Moore.

5.     In 1967, "Sam & Dave" recorded the album entitled *Sam and Dave Soul Men*, under the Atlantic Records-distributed Stax label. *Sam & Dave Soul Men* launched the hit single *Soul Man*, which earned the Duo a Grammy after achieving #1 status on both Cashbox and Record World's Pop Charts and #2 on Billboard's chart. *Soul Men* spent 7 weeks at the #1 position on the R & B Charts, tying Marvin Gaye's *I Heard It Through the Grapevine* as the longest charted #1 R & B single of 1967.

6.     More significantly, while they continued to perform together intermittently over the next twenty years, "Sam & Dave" also became identified as "Soul Men," and in some fashion or configuration the "Sam & Dave" brand continues to be so known to this date. Commencing after release of the song *Soul Man*, SOUL MEN became integrated with the "Sam & Dave's" brand and was adopted and used as part of the trademark. *The Original Soul Men Sam & Dave* is the title of a new DVD about "Sam & Dave" released worldwide in Spring 2008 by Historic Music, Inc. and Universal Music Enterprises ("*The Original Soul Men Sam & Dave DVD*").

7.     Further, for more than the past quarter century, as a solo act, Sam Moore adopted and used as his professional name the service mark SOUL MAN, along with THE LEGENDARY SOUL MAN and THE ORIGINAL SOUL MAN to refer exclusively to himself and his entertainment services and related goods.

8.    In 2003, the Weinsteins released a documentary on the 1960s soul era, entitled *Only The Strong Survive*, for their prior company, Miramax.   Through the production of that film, the Weinsteins, who already knew Sam Moore, became much more familiar with Sam Moore, his personal and professional background, and the relevance of the marks "Soul Man" and "Soul Men" to him.   The Weinsteins expressly relied on Sam and Joyce Moore (who was also in the documentary) to help market that film through numerous festivals, media appearances and interviews.

9.    In early 2008, Sam Moore learned from a press release that TWC and the Weinsteins were producing a new film entitled "Soul Men" about a black duo from the 1960s that broke apart and was reuniting after a long separation to perform a tribute at the famed Apollo Theater.   The Movie's title, theme, characters, and music (the Memphis sound which became synonymous with Stax Records) immediately raised suspicions that the lead characters of the Movie were being passed off as "Sam and Dave."

10.    Sam Moore further learned from a copy of the shooting script of the Movie more things about the plan for the Movie and many references to Sam Moore, including:

> a.    ***The first lines of the script states***: "NOTE: This movie is a celebration of classic American soul. The songs we reference are from the Stax Records catalogue, and are intended for illustrative purposes only."
>
> b.    ***The next line of direction states*** that over the opening credits "The infectious, foot tapping sounds of 'Sam & Dave' rendition of *Sweet Soul Music* plays over the credits." While that song plays,[1] the script then provides for vintage footage to place the Movie's lead characters, the singing duo The Real Deal, into their era – the 1960s and 1970s.

---

[1] The selection of *Sweet Soul Music* is material, because the lyrics of the song specifically spotlight the most prominent classic R&B performers, writers and songs of the era, including "Sam & Dave's" *Hold On I'm Comin'*.   Of all the people mentioned in the song, the only person still alive is Sam Moore.

c. As the story unfolds, the Movie's duo plan a comeback performance at the Apollo Theater[2] "like the old days" performing with Isaac Hayes and Booker T. Jones, well known co-performers with "Sam & Dave."

d. Preparing for their Apollo appearance, the first number The Real Deal sings in the Movie with a pick up band at a dive (No Tell Motel and Lounge in Flagstaff, AZ) is the "Sam & Dave" signature classic, *Hold On I'm Comin'*.

e. The next song the script calls for is *I'm Your Puppet* from 1967, made famous by James and Bobby Pruify, also covered by "Sam & Dave."

f. The shooting script has an extended radio interview scene between The Real Deal and Isaac Hayes, recalling a similar interview between Isaac Hayes and Sam Moore in the Weinstein's documentary, *Only The Strong Survive*.[3]

11. With this demonstrable evidence of the Movie drawing on Sam Moore's professional career, reputation, life story and trademarks, initially through an associate and then formally through counsel, Sam Moore expressed his concerns and warned the Weinsteins and TWC not to impinge upon his rights of privacy and publicity, not to tarnish his reputation, and not to create confusion based on the use of his trademarks, reputation, legacy and historic and cultural import. At the same time, Sam Moore extended an offer to the Weinsteins to participate in a meaningful way to ensure the authenticity of any references to himself, his trademarks, his likeness, his reputation and his career.

12. The Weinsteins, experienced Hollywood producers personally in charge of the production of the Movie, rebuffed Sam Moore's offer. Their failure to clear the

---

[2] On September 29, 2008, more than one month before the Movie was released, Sam Moore performed at the Apollo Theater with Japanese superstar, Akiko Wada, singing *Soul Man* with her. Also that day, the Apollo screened a 1969 performance of "Sam & Dave" with Akiko Wada singing *Hold On I'm Comin.'*
[3] On information and belief, this scene was cut from the released version of the Movie because Isaac Hayes had suffered a stroke and was impaired and unable to participate in a scene of that scope.

Plaintiffs' rights necessary for production of the Movie, after Sam Moore's notices, was intentional, knowing, wanton and reckless.

13.    To market the Movie and encourage the public to purchase tickets to see the Movie and purchase merchandise associated with the Movie, the Defendants TWC and MGM launched a website at www.soulmen-movie.com (also www.soul-menmovie.com) and produced other marketing materials.  The website and marketing materials incorporate Plaintiffs' marks, professional names, likeness and other indicia of identity, including aspects of Sam Moore's life story, thereby deceiving the public to believe that the Movie is about Sam Moore and the Duo, and/or endorsed by Sam Moore and/or the SJM Trust.

14.    Sam Moore has been told by several individuals, including fans, business associates, other artists and even family members that, after encountering Defendants' websites and other advertising for the Movie, they believed the Movie to be a bio-pic about him.

15.    On information and belief, the false impression conveyed by the website and advertising for the Movie has been highly damaging to Sam Moore, because among other things, the Movie is filled with incessant, gratuitous and offensive language; the Movie contains unnecessary, inappropriate and vulgar sexual content; the lead character identified with Sam Moore engages in the criminal use of a handgun;[4] the lead characters' musical performances, most particularly "Sam & Dave" song, *Hold On I'm Comin,'* are so poor as to make a mockery of Sam Moore's talent; and the characters engage in the use of constant, repeated and despicable racial slurs and epithets.  Each of

---

[4] Sam Moore has a long, personal detestation of handguns.  In fact, his famous breakup with Dave Prater can be traced to Dave's shooting of his girlfriend, Judy Gilbert.

these elements constitutes serious insult to Sam Moore's reputation, his talent, his legacy and his long-held personal views and beliefs. In addition to invading Plaintiffs' privacy interests by casting Sam Moore in a false light, the Movie's tawdry content dilutes Plaintiffs' famous SOUL MAN and SOUL MEN marks, and undermines Sam Moore's reputation for laudatory charitable and public deeds.

16. On information and belief, the Defendants TWC and Genius Products released the Genius Products DVDs on or about February 10, 2009.

17. A copy of the cover to *The Original Soul Men Sam & Dave DVD* is reproduced below at the left, and a copy of the cover of the Genius Products DVDs is reproduced below at the right.

 

18. The Genius Products DVDs will compete directly with *The Original Soul Men Sam & Dave DVD* that was released in the spring of 2008 in foreign markets and in

the United States on December 8, 2008. The Genius Products DVDs have created and will continue to create a likelihood of consumer confusion to the detriment of sales of *The Original Soul Men Sam & Dave DVD*. On information and belief, it is more than mere coincidence that Genius Products DVDs, through a widely distributed press release, announced on December 9, 2008, that it would release a Blu-Ray version of the Movie in February, 2009. Although the Movie had been in the theaters only one month at the time, and the Genius Products Blu-Ray was not going to be available to consumers for more than sixty days, the announcement was timed to the day following the U.S. release of *The Original Soul Men Sam & Dave DVD*. The Plaintiffs, as well as the Estate of Dave Prater, Historic Films and Universal Films, U.K., have a financial stake in the success of *The Original Soul Men Sam & Dave DVD*.

19. On information and belief, included in the packaging for the Genius Products DVDs is an advertising insert marketing Concord's Stax Soundtrack. In the advertisement, Concord markets other products from its collection, under the heading: THE ORIGINAL SOUL MEN ARE AT STAX! The use of the phrase THE ORIGINAL SOUL MEN, which is a trademark of Sam Moore, is without permission or license, and creates confusion as to his endorsement of the Movie, Genius Products DVDs, Concord's Stax Soundtrack and the other Concord DVD and CD products.[5]

20. On information and belief, the misuse and infringement of Sam Moore's trademark obscures Concord's lack of rights to the most important legacy of the Stax Records catalogue. On information and belief, although Concord acquired certain titles from the Stax successor-in-interest, Concord never acquired rights to "Sam & Dave's"

---

[5] The Plaintiffs were provided no prior notice of the Concord Stax Soundtrack advertisements' trademark misuse. On information and belief, Concord is owned directly or indirectly by Norman Lear, long respected as a foe of racial and social injustice and a champion of individual rights and liberties.

*Soul Man* or to any aspect of the "Sam & Dave" history, legacy, rights of publicity and promotion or act that helped build Stax into a legendary record label in the 1960s. Any such rights are retained by the Plaintiffs' and under certain circumstances, Atlantic Recording Corporation as they attach to the masters. In short, Concord's Stax label has no claim to or association with "The Original Soul Men."

21.     The Plaintiffs seek fair redress for the wrongs committed against them by the Defendants, including damages and injunctive relief, as allowable under Tennessee and federal law. Since the Movie, the Genius Products DVDs, the Concord's Stax Soundtrack and all audio-visual media products developed therefrom are likely to have a virtually perpetual life, the Plaintiffs seek recall and destruction of all infringing versions of the Movie, the Genius Products DVDs, Concord's Stax Soundtrack and all audio-visual media products developed therefrom and related marketing materials. Plaintiffs also seek prospective incorporation of an appropriate disclaimer into all advertising and marketing materials, and future versions of the Movie, including the theatrical version, the Genius Products DVDs, Concord's Stax Soundtrack, as well as all U.S. and overseas cable and television broadcast versions.

## PARTIES

22.     The Plaintiffs Sam Moore and Joyce Moore are residents of the State of Arizona with a personal address in Scottsdale, AZ.

23.     The Plaintiff SJM Trust is a Tennessee Irrevocable Trust.

24.     On information and belief, TWC is a Delaware limited liability company with offices in Los Angeles, CA and New York, NY. On information and belief, TWC operates a division under the name Dimension Films, which is the producer of the Movie.

25.     On information and belief, Genius Products is a Delaware limited liability company, at least 70% owned by TWC and/or Harvey Weinstein personally, with offices in Santa Monica, CA.   On information and belief, Genius Products is the manufacturer and distributor of the Blu-Ray and DVD version of the Movie.

26.     On information and belief, MGM is a Delaware Corporation with offices in Los Angeles, CA.   On information and belief, a division of MGM is the distributor of the Movie.

27.     On information and belief, Concord is a Delaware Corporation with offices in Beverly Hills, Berkeley and Concord, CA.   On information and belief, Concord is the manufacturer and distributor of Concord's Stax Soundtrack on its solely-owned label branded "Stax."

28.     On information and belief, Harvey Weinstein, a resident of the State of New York, is the Executive Producer of the Movie.

29.     On information and belief, Bob Weinstein, a resident of the State of New York, is the Executive Producer of the Movie.

## JURISDICTION AND VENUE

30.     On information and belief, this Court has personal jurisdiction over Defendant TWC, because it entered the State of Tennessee to film portions of the Movie within the State.   On information and belief, TWC sought permits to conduct its motion picture business activities within the State.

31.     On information and belief, this Court has personal jurisdiction over Defendant MGM, because it entered the State of Tennessee to market the Movie to citizens of the State.   On information and belief, Defendant MGM has continuous and

ongoing business contacts with residents by, among other things, purchasing advertising in Tennessee newspapers, radio and television stations, targeting Internet advertising to citizens of the State, including the Metropolitan City of Nashville and Davidson County, as well as surrounding counties in Middle Tennessee.

32.     On information and belief, this Court has personal jurisdiction over Defendant Genius Products, because it entered the State of Tennessee to market and sell DVD versions of the Movie within the State, and by targeting Internet advertising to citizens of the State, including the Metropolitan City of Nashville and Davidson County, as well as surrounding counties in Middle Tennessee.

33.     On information and belief, this Court has personal jurisdiction over Defendant Concord, because it entered the State of Tennessee to market and sell Concord's Stax Soundtrack within the State and by targeting Internet advertising to citizens of the State, including the Metropolitan City of Nashville and Davidson County, as well as surrounding counties in Middle Tennessee.   Furthermore, certain tracks on the Concord's Stax Soundtrack were originally recorded in the State.

34.     On information and belief, this Court has personal jurisdiction over Defendant Harvey Weinstein, because Harvey Weinstein entered the State of Tennessee to produce the Movie.

35.     On information and belief, this Court has personal jurisdiction over Defendant Bob Weinstein, because Bob Weinstein entered the State of Tennessee to produce the Movie.

36.     This Court has jurisdiction over the subject matter pursuant to 15 U.S. C. § 1121 (actions arising under the Federal Trademark Act), 28 U.S.C. § 1338(a) (acts of

Congress relating to trademarks, 28 U.S.C. § 1332 (diversity of citizenship), 28 U.S.C. § 1138(b) (pendent unfair competition claims), and 28 U.S.C. § 1367 (other pendent state law claims). The amount in controversy exceeds $75,000.

37.    This Court has subject matter jurisdiction to hear Plaintiffs' trademark and right of privacy/publicity, tarnishment, dilution and unfair competition claims under 15 U.S. C. § 1125(a); 28 U.S.C. §§ 1331, 1338 and 1378; and 28 U.S.C. § 1332 as there exists diversity of citizenship among the parties hereto and the amount of controversy, exclusive of interest and costs, exceeds the sum of $75,000.

38.    Venue in this District is proper under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS PERTINENT TO ALL CLAIMS

### A.  Background of Sam Moore's Musical and Movie Career

39.    After an offer to replace Sam Cooke as the lead singer of the renowned gospel group, "The Soul Stirrers," Sam Moore opted to pursue a career path in secular or popular music. This decision led him to team with Dave Prater, Jr. in Miami, Florida in late 1960 or early 1961, forming the singing duo, "Sam & Dave."

40.    After a regional hit under their 1962 Roulette Records contract, "Sam & Dave" were released by Morris Levy and signed in early 1965 by famed music producer Jerry Wexler to Atlantic Records. Atlantic Records CEO, Ahmet Ertegun, agreed with Mr. Wexler to "loan the duo out" to their Memphis-based Stax Records production group with whom Atlantic had a distribution agreement.[6]  While associated with Stax, "Sam &

---

[6] On information and belief, Atlantic terminated its distribution agreement with Stax in 1968, retaining rights to all of the "Sam & Dave" masters as well as all the masters created by all of the artists on Stax up to the date of the dissolution of the distribution deal. Stax filed for bankruptcy in 1975, and certain of the

Dave" gained national and international renown, selling millions of records, touring globally and winning major record industry awards and accolades.

41.     Starting in 1966, they had a remarkable series of ten top Pop and R&B hits, including *"Hold On! I'm Comin'"* (1966), *"You Got Me Hummin'"* (1966), *"When Something Is Wrong With My Baby"* (1967), *"Soul Man"* (1967) and *"I Thank You"* (1968). Their most famous songs were written by Isaac Hayes and Dave Porter. Isaac Hayes was also the producer/arranger, creative genius and pianist on virtually all of the "Sam & Dave" Stax recordings, and especially all of their hits.

42.     Isaac Hayes and Sam Moore both had been nicknamed "Bubba," as young children, but Isaac decided to bestow a second, more personal name on Sam, calling him "Bless" (shortened from "Blessed"). That name came from Isaac's profound respect for Sam's vocal gift and abilities. Throughout their lives and professional careers, Sam Moore and Isaac Hayes were inextricably linked.

43.     This fact was so evident that when the Weinsteins, through their former production company Miramax, produced the 2003 documentary project, *Only The Strong Survive*, about the soul legends of the 1960s and 1970s, Sam Moore's performance for that project was filmed at a Tribute Concert honoring Isaac Hayes. After the documentary was released, the Weinsteins enlisted Sam Moore and Isaac Hayes to promote the film for Miramax. Sam and Isaac actually performed *"Soul Man"* together on "The Tonight Show with Jay Leno."

44.     Sam Moore was close professionally and personally with Otis Redding, a Stax Records label-mate and best friend. "Sam & Dave" performed throughout Europe

---

assets of the company were acquired by Fantasy Records in 1977. Concord acquired Fantasy in 2005 without rights to "Sam & Dave's" master recordings.

with Otis Redding before his untimely and tragic death in an airplane crash in December, 1967 in Madison, Wisconsin.[7]

45.    Despite their professional success, "Sam & Dave" had a tempestuous personal relationship, culminating in a highly publicized breakup in 1970, all stemming from Dave's shooting of (but not killing) his second wife (then girlfriend), Judy Gilbert. After the Duo's first split, Jerry Wexler signed Sam Moore as a solo artist with the label, Atlantic Records.[8]  Nevertheless, with their public clamoring for the duo, Sam Moore and Dave Prater were forced by their label and management to reunite and continued to perform and record together intermittently from late 1972 to 1981, though their scarred, personal relationship never healed.

46.    In 1982, shortly after the final appearance of "Sam & Dave" on New Years Eve 1981, Sam Moore's life, which had many ups and downs, turned around, dramatically and permanently.  While on a tour in Europe, in March of 1982, with former Stax and Atlantic Records label-mates Carla Thomas, Eddie Floyd and Wilson Pickett, Sam Moore married Joyce McRae (Joyce Moore), his girlfriend who had also become his personal manager subsequent to the split from Dave Prater and their manager, Jeff Brown.  With Joyce's publicly well-documented help, Sam Moore ended his long-term

---

[7] On information and belief, Defendant TWC's website states Otis Redding died in Montana, intentionally or negligently misrepresenting an important fact associated with this great singer's tragic demise. Moreover, despite TWC's website statement that says Otis Redding was the film duo's "idol," the producers chose to have Bernie Mac's character render Otis' classic, *(Sittin' on) The Dock of The Bay*, during a scene in which Mac's character is undergoing a prostate exam.

[8] Mr. Wexler decided not to release Sam Moore's solo album by Atlantic and put it in their vault for more than 30 years. However, Joyce Moore was able to secure a license, and it was finally released in 2002. At a screening of *Only The Strong Survive* at The Hamptons Film Festival, Mr. Wexler realized what a mistake he had made, and he immediately and publicly sought forgiveness from Sam Moore for shelving what he later described as a "brilliant" album that could have made Moore a solo super star.

addiction to heroin and methadone and became a prominent advocate for anti-opiate, anti-drug programs.

47.    Discovering that his celebrity could focus public attention on worthy causes, Sam Moore committed himself to numerous campaigns. Sam Moore was named lead plaintiff in an ERISA and RICO class action pension fraud case, designed to remedy more than 40 years of false accounting and payment practices by the recording industry to AFTRA'S Health and Retirement Pension Funds. Sam Moore testified before House of Representatives Subcommittees seeking to stop the practice of "fake and impostor" acts and is currently a prominent and respected champion of legislation seeking equitable compensation for American recording artists when terrestrial radio broadcasts their performances (recordings of their music and songs) on AM and FM stations. Sam and Joyce Moore have also tirelessly dedicated themselves to helping charities, including one that benefit special needs children and their families, another that helps the hearing impaired, and several other worthy causes and individuals.

48.    After Dave Prater's death, the Plaintiffs built Sam Moore's brand as "The Legendary Soul Man," into a famous trademark on a global basis. For more than two decades (twenty years), Sam Moore has performed and recorded as a solo artist as well as with other well-known musicians who were his fans and who held his vocal abilities in great respect, including Conway Twitty, Bruce Springsteen, Sting, Elvis Costello, Don Henley, Elton John, Phil Collins, The Blues Brothers with Dan Aykroyd and Jim Belushi, and Lou Reed, often performing his classic hits, including *Soul Man*, with them, live and on television.

49.     Sam Moore has also performed for Presidential Inaugurals.  In 1989, Sam Moore was invited to participate as a headliner in "A Celebration for Young Americans" at President George H.W. Bush's Inaugural Gala.  In January, 2009, Sam Moore was a headline act for The Creative Coalition's non-partisan ball marking President Obama's inauguration.

50.     Sam Moore has also appeared in several major feature motion pictures. He was one of the fabled "Swanky Modes" in the 1988 John Cusack/Tim Robbins classic film, *Tapeheads*.  In the sequel, *Blues Brothers 2000*, Sam Moore played the role of Reverend Morris opposite James Brown, who revived his preacher character from the first Blues Brothers movie. In 2002, in Steven Bing's *Night At The Golden Eagle*, he appeared as a down-and-out tenant opposite Fayard Nichols of the world famous Nichols Brothers.   In 2003, he appeared in the Miramax/DA Pennybaker/Roger Friedman documentary, *Only The Strong Survive*, along with Isaac Hayes and other Stax label-mates, including Rufus and Carla Thomas.    Joyce Moore is also an on-screen participant in several segments of that documentary film.

51.     Sam Moore has also participated in numerous other high profile and prestigious events, including The Arrival of The Olympic Torch Celebration, Nashville, Tennessee (1996); The Tennessee Bi-Centennial; The Inaugural Gala for Tennessee Governor Donald Sundquist; The Montreaux Jazz Festival; The Royal British Air Force's 50th Anniversary, Swindon, U.K.; American Cinema Awards Galas 1997-2002; Cannes Film Festival (1999 and 2004); The Vienna Film Festival; The Telluride Film Festival; and The Hamptons Film Festival.  Sam Moore and Joyce Moore attended many of the

aforementioned film festivals to market and promote the Weinsteins' documentary, *Only The Strong Survive.*

52.     In 2006, Sam Moore's album *Overnight Sensational,* produced by American Idol judge Randy Jackson, was released.   The album includes guest performances with Sam Moore by many of the great singing artists of our day, including Bruce Springsteen, Sting, Jon Bon Jovi, Mariah Carey, Eric Clapton, Nikka Costa, Sheila E., Fantasia, Billy F. Gibbons, Vince Gill, Van Hunt, Billy Preston, Robert Randolph, Paul Rodgers, Travis Tritt, BeBe Winans, Steve Winwood, Wynonna and Zucchero.

### B. *Importance of SOUL MAN/SOUL MEN Marks*

53.     Throughout their careers, "Sam & Dave" as a duo and Sam Moore as a solo artist, have been associated with one song in particular, *Soul Man,* from the 1967 album, *Sam & Dave Soul Men.*[9]   The cover for the album appeared as follows:



---

[9] "Soul Man" is the singular or individualized and personalized version of the title of the Movie; "Soul Men" is the duo or plural application to the same title.

54.     Although Moore and Prater continued to perform under their famous first names, they also became identified as "Soul Men." The duo adopted and used SOUL MEN as part of their identity for their entertainment services in the U.S. and abroad. For example, a 1969 Poster for a "Sam & Dave" performance in Steubenville, OH. the Duo is pictured as Sam and Dave and directly under their photo are the words, "Soul Men," and their backing band is identified as "Sam & Dave's Fantastic 'Soul Men' Orchestra," so named by Sam Moore. (Exhibit 1.)

55.     Newspaper and magazine articles routinely referred to "Sam & Dave" as the "Soul Men." For example, a *Time Barrier Express* magazine trumpets: "Holding On: Original Soul Men 'Sam & Dave.'" (Exhibit 2). In 1996, Sam Moore was featured in a *Nashville Banner* article entitled "Soul Man Sam stretches musical style." The article stresses Sam Moore's long ties to Nashville, and his many performances and appearances in his adopted city. (Exhibit 3.)

56.     As a solo artist, Sam Moore adopted and used the trademark SOUL MAN, and he became professional known as THE LEGENDARY SOUL MAN and ORIGINAL SOUL MAN, adopting and using those phrases as service marks and trademarks for his entertainment services and related products. (Exhibit 4.)

57.     In the 1970s, "Sam & Dave" and their hit song *"Soul Man"* served as the inspiration for the Saturday Night Live parody, "The Blue Brothers," starring comic actors/performers, John Belushi and Dan Aykroyd, both of whom were white. In 1980, the producers of the film *The Blues Brothers* starring Belushi and Aykroyd made specific reference to and used two "Sam & Dave" musical performances in their movie. Unlike the present case, there was no passing off the white performers, Belushi and Aykroyd, for

"Sam & Dave." In May, 1988, Sam Moore, the surviving Duo member, performed over the past twenty-one years, with Dan Aykroyd, the surviving Blues Brother, at Madison Square Garden for the Atlantic Records 40th Anniversary extravaganza.

58. In 1986, the producers of the film *Soul Man* (a comedy about a white student who applies for a black scholarship to go to Harvard) recognized Sam Moore's indelible association with the professional name and mark SOUL MAN. They secured his personal involvement with the film, ultimately contracting with him to create a new recording of *Soul Man* with Lou Reed, as well as creating a MTV/VH-1 broadcast promo video as part of the project.

59. In 1992, "Sam & Dave" were inducted into the Rock & Roll Hall of Fame. The inscription for the induction reads, in part:

> The greatest of all soul duos, Sam (Moore) and Dave (Prater) brought the sound of the black church to pop music with their string of call-and-response hits for Stax Records from 1965 to 1968. The pair usually worked with the songwriting and production team of Isaac Hayes and David Porter, using Booker T. and the MG's as backing musicians. From these collaborations came such soulful, fevered exchanges as "You Don't Know Like I Know," "Hold On, I'm Comin'," "You Got Me Hummin'," "Soul Man" and "I Thank You." Sam and Dave also gained renown as an electrifying live act in the Stax revues of the mid-Sixties, where they'd compete for applause with such labelmates as Otis Redding.

Sam Moore invited Isaac Hayes and David Porter to the event as his guests because of his gratitude for their participation in his and his former partner and the duo's success.

60. In 1999, Sam Moore received further acclaim from the music industry, when he was inducted into the NARAS Song Hall of Fame. In announcing Sam Moore's election, NARAS provided Sam Moore with a certificate reading:

> Be it known that
> **"Soul Man"**
> **Sam Moore**

> **Stax 1967**
> Has been elected to the
> *National Academy of Recording Arts & Sciences Hall of Fame*
> Honoring recordings of lasting, qualitative or historical significance in the
> In the year 1999
> and that
> **Sam Moore**
> Has been awarded this certificate as Artist. (Exhibit 5)(emphasis added).

61.     In 2004 and again in 2008, Rolling Stone Magazine named *Soul Man* one of the 500 greatest songs of all time. Rolling Stone Magazine also recently recognized Sam Moore as one of the greatest 100 Voices in Rock Music History.

62.     The marks SOUL MAN and SOUL MEN are famous marks used to identify the source of entertainment services and pre-recording entertainment performances featuring Sam Moore and "Sam & Dave" respectively. These marks are famous throughout the United States and the world and are uniquely associated with the Plaintiff, Sam Moore.

**C.     *Defendants' Movie, SOUL MEN, Intentionally and Unfairly Draws upon Sam Moore's Name, Reputation and Likeness***

63.     On or about February 1, 2008, Sam Moore learned that the Weinsteins were producing a motion picture to be entitled *Soul Men*, starring Samuel L. Jackson (Sam) and Bernie Mac. The storyline of the Movie is that two singers famed for the Memphis soul sound of the 1960s and 1970s are planning to stage a reunion at a musical tribute for their one-time partner, who had recently died. Prior to the reunion, the duo, known as The Real Deal,[10] had a feud over lifestyles and creative differences and

---

[10] The Movie's use of the phrase "The Real Deal," which means authentic or genuine, is designed to support the relevance of the characters' placement of the singing team into the real events of the 1960s. That verisimilitude underscores the exploitation of the "Sam & Dave" brand, the only R&B duo from that era associated with the Stax.

remained separated for many years. In the Movie, they reunite and travel across the country and back in time, performing at different venues to relive and revive their glory days.

64.    On learning about the project and after reviewing the shooting script and key elements of the Movie (as set forth about in Paragraph 10 *infra*), Plaintiffs Sam and Joyce Moore became concerned that the Movie would improperly take aspects of Sam Moore's life story and performer persona as Sam of "Sam & Dave," would infringe his statutory and common law rights of privacy and publicity, would tarnish his reputation, would place him in false light, and would infringe upon his property interests in the marks SOUL MEN and SOUL MAN.

65.    On or about March 3, 2008, Plaintiff placed TWC on formal notice of his concerns by letter of Counsel. (Exhibit 6.)

66.    Through its counsel, TWC asserted the Movie was fictitious and had no relation to the likeness or persona of Sam Moore individually or as part of "Sam & Dave" and/or his marks, and did not infringe any his rights. (Exhibit 7.)

67.    On information and belief, contrary to the denials of TWC and MGM, the Movie presents its story and characters in a verisimilar world. The Defendants intentionally and/or recklessly incorporated into the Movie, marketing materials and advertising for the Movie, Plaintiffs' marks and professional names, along with many aspects of Sam Moore's personal history and many indicia of his identity, including his professional names, likeness, aspects of his professional act and persona. On information and belief, these violations were committed solely to capitalize on the fame and goodwill

belonging to Sam Moore for Defendants' own benefit, all without consent or compensation to the Plaintiffs.

68. On information and belief, among the elements appropriated by the Defendants TWC, the Weinsteins, MGM and Genius Products are the following:

a. The Movie is entitled *Soul Men*, a phrase that is inextricably linked and associated with "Sam & Dave" and Sam Moore personally. This association is reinforced by core elements of the film, a story of a soul duo from the 1960s that performed Stax-label songs, including *Hold On I'm Comin'* which is a featured song in the Movie.

b. The poster for the Movie shows the Movie's duo, played by Mr. Jackson and Mr. Mac, dressed in white and with microphone imitating "Sam & Dave" on stage persona. See Paragraph 17 *infra*.

c. The Movie's duo performs on stage with a brass and keyboard band styled after the SOUL MEN ORCHESTRA, and employs dance moves, mannerisms and catchphrases drawn directly from Sam Moore performances.

69. Furthermore, the website for the Movie, www.soulmen-movie.com (also www.soul-menmovie.com) includes "biographical information" about the Movie's lead characters that intentionally place the duo in the time and era of Sam Moore and draws liberally from Sam Moore's personal history. For example:

a. *The website describes the characters as "a popular singing duo back in the day" i.e. the 1960s and 1970s.* (Exhibit 8.) **"Sam & Dave" are the #1 soul duo back in the very same day, the 1960s and the 1970s.**

b. *The lead characters are described as starting their careers in Memphis singing with a third performer in 1960.* (Exhibit 9.) **"Sam & Dave" start their singing career together in 1960-61 and become associated with the Memphis sound in the mid-1960s.**

c. *The singers are discovered by a legendary record honcho and signed to a contract.* (Exhibit 10.) **"Sam & Dave" are**

discovered and signed to a contract by legendary record honcho, Jerry Wexler.

d. *The duo sings, I'm Your Puppet; #4 on the charts.* (Exhibit 11.) **"Sam & Dave" record a cover version of *I'm Your Puppet*; while other of their songs chart as high as #1 and #2.**

e. *The performers' "idol" was Otis Redding, who died in a plane crash in "Montana."* (Exhibit 12.) **Sam Moore is professionally and personally very close to Otis Redding, appearing with him on many shows in the US and Europe; Sam Moore is a pall barer at Otis Redding's funeral after his plane crash in Wisconsin.**

f. *By 1972, Marcus Hooks and The Real Deal are one of the biggest R&B acts in the world.* (Exhibit 13.) **By 1971, "Sam & Dave" are the top R&B soul duo in the world.**

g. *A photo with Elvis Presley, the legendary Memphis performer, emphasize their film duo's ties to Memphis.* (Exhibit 14.) **"Sam & Dave" rose to fame while associated with the Memphis based Stax Label and, therefore have close ties to Memphis, and are the #1 duo of Memphis-based Stax Records.**

h. *1977 Marcus Hooks leaves group,* (Exhibit 15), *and the duo splits in 1979.* **"Sam & Dave" split 1970 and again permanently in 1981.**

i. *Film duo reunites as The Real Deal to play a show at the famous Apollo Theater for the first time in several decades.* (Exhibit 16.) **"Sam & Dave" reunite intermittently between 1972-1981. In 2008 Sam Moore appears for the first time in nearly 40 years at the Apollo Theater and performed *Soul Man* to a thunderous, standing ovation.**

j. *1989 Marcus Hooks "artist of the year," slated to be inducted into Rock'N'Roll Hall of Fame in 1990.* (Exhibit 17.) **In 1992, "Sam & Dave" are inducted into R&R Hall of Fame.**

70. Furthermore, on information and belief, a number of people who are or were closely associated with Sam Moore and/or "Sam & Dave" appear in the Movie, either prominently, in cameo roles or by mention, including:

a. *Charles "Skip" Pitts: a guitarist, he plays part of the Memphis backing band for the Real Deal.* **A friend of Sam Moore, Mr. Pitts also performed with Sam on several occasions over the years.**

b. *Willie Hall: a drummer, he also plays in the Memphis scene in Movie.* **Mr. Hall was the only drummer in both The Blues Brothers movies. He performed with Sam Moore and Dan Aykroyd for the premier of *Blues Brothers 2000* in Cannes, France.**

c. *Isaac Hayes: legendary song writer and record producer (of among others the song Soul Man) and performer appears in the Movie at Stax label headquarters and again at The Apollo Theater scene.* **Sam Moore's solo legacy and that of his Duo are, as previously stated herein, inextricably linked to Isaac Hayes.**

d. *Ben Cauley: a trumpeter, who appears in the Memphis scene.* **He was the only survivor of the Otis Redding plane crash in 1967 and performed many times with Sam Moore at Memphis events.**

e. *Booker T. Jones: was noted in the film's dialog to be attending the funeral of Marcus Hooks.* **Booker T Jones as leader of Booker T and The MG's was the backing band both in the studio and on tour for years with "Sam & Dave", and was Sam Moore's label-mate as well. Booker T and Sam have worked together on occasion in the late 80's and forward and remain friends.**

f. *Carla Thomas, who is also mentioned in the Movie,* **was another label-mate of Sam Moore's at Stax Records. Carla Thomas appeared in both the United States and Europe with Sam Moore, singing duets with him at festivals and events over the past 25 years.**

g. *Otis Redding: referenced incorrectly as to the location of his death from a plane crash in the Movie's website.* **Otis Redding was Sam Moore's best friend at Stax Records.**

h. *Randy Jackson is the announcer over the opinion credits of the Movie.* **Randy Jackson is one of Sam and Joyce Moore's best friends and the producer of his most recent Grammy nominated album, "Overnight Sensational."**

71. Furthermore, on information and belief, other elements of the Movie that intentionally take from Sam Moore and/or are calculated to support a passing-off of the two lead characters as "Sam & Dave," include the following:

a. Memphis locales featured in the Movie and associated with Sam Moore performances, including The Stax headquarters which is now the Stax Museum, The Peabody, The Orpheum (Sam Moore performed there on four separate occasions), Beale Street where there is a star honoring Sam Moore and "Sam & Dave", and other locales where Sam Moore performed (The New Daisy, BB Kings, The Hard Rock, The Pyramid).

b. Samuel L. Jackson's character wears Ray-Ban Wayfarer's and a stingy brimmed hat throughout many scenes. That hat and specific style sunglasses were prominently worn by Sam Moore in his performing career, and those glasses are tied to Sam Moore's identity as The Original Soul Man. See Exhibit 18 (Ray-Ban Sunglasses Celebrate The 1998 Collection and Launch First Global Advertising Campaign. Press release announces "Sam Moore, the original soul man, will host the night's festivities."). There are numerous images of "Sam & Dave" wearing a similar looking stingy brim hat(s) in the studio and on album covers, for example see Exhibit 19.

c. On information and belief, Samuel L. Jackson studied Sam Moore's recording of "*Hold On, I'm Comin*'" to imitate Sam Moore's performance. This included Jackson's adding the catchphrase that Sam Moore ad libbed when he sang the song originally, "Looka here Dave, all she's got to do is... ". In the Movie, Jackson quoted that line, only changing the name "Dave" to "Floyd," Bernie Mac's character's name in the Movie.

72. On information and belief, the presence or mention of these individuals in the Movie, *along with the absence of any explicit reference to Sam Moore and/or "Sam & Dave*," appear calculated to support a passing-off of the Movie's two lead characters as Sam (Moore) & Dave (Prater).

**D.** *Movie's Obscenities, Vulgarities and Use of Illegal Handgun Tarnish Sam Moore's Reputation*

73.     On information and belief, the character played by Mr. Jackson is passed off as or identified with Sam Moore by, among other things, his lead singing role, on stage dancing, use of Ray-Bans and stingy brim hat.

74.     On information and belief, the character played in the Movie by Mr. Jackson, intentionally and repeatedly uses the offensive and socially derogating word "Nigger" throughout the film, as well as other gratuitous obscenities, including "fuck" and "Mother Fucker," and the use of "bitches" to refer to white women. Mr. Jackson's character, a former felon in the Movie, (shown robbing a bank after his act breaks up), brandishes and uses a handgun during the duo's road trip from California to the Apollo Theater in New York. The use of a gun by a former felon would be illegal and a violation of state law.

75.     On information and belief, to the extent that the public associates Mr. Jackson's character with Sam Moore, the use of the "N" word and other obscenities and his criminal use of a handgun, among other actions, severely tarnishes Sam Moore's reputation, marks and publicity rights and places Sam Moore in a false light.


**E.** *The Weinsteins are Liable for Vicarious Liability & Contributory Liability*

76.     On information and belief, the Weinsteins controlled the production of the Movie and the Genius Products DVDs. At any time, they could have consulted with the Plaintiffs and negotiated a license to use Plaintiffs' marks, professional names, and likeness. Despite actual knowledge of the Plaintiffs' request to not infringe on their

rights, the Weinsteins proceeded ahead without ever obtaining Plaintiffs' consent or a license.

77.     On information and belief, the Weinsteins are vicariously liable for the infringement of Plaintiffs' rights and marks, because they had the right and ability to supervise and/or direct the making of the Movie, including selection of the title of the Movie and use of the elements that take from Plaintiffs, and the unfair competition and infringement embodied therein, as well as an obvious and direct financial interest in the exploitation of materials belonging to Plaintiffs, and they exercised that supervision and/or direction to the detriment of the Plaintiffs.  They materially contributed to the infringing activity stated above, they had the ability to supervise the infringing activity, and they had a direct financial interest in the activity.

78.     On information and belief, the Weinsteins also have contributory liability because they were the moving, active conscious force behind the corporate Defendants' unfair competition and infringement in that they both/either (a) intentionally induced the corporate Defendants to infringe on Plaintiffs' rights and marks, and/or (b) produced the Movie and Genius Products DVDs with actual or constructive knowledge that such production would lead directly to distribution of the Movie and the infringement of Plaintiffs' rights and marks, all to the Weinsteins' financial benefit.

79.     The Weinsteins were warned multiple times not to proceed with the release of the Movie and Genius Products DVDs, and yet they intentionally ignored the warnings and proceeded ahead.  In so proceeding, the Weinsteins' actions rose to the level of "willful blindness" or "reckless disregard."  At a minimum, the Weinsteins' actions were negligent.

**F.   Marketing Materials for Concord's  Stax Soundtrack Violate Plaintiffs' Rights and Marks**

80.    On information and belief, in connection with the sale of the Concord's Stax Soundtrack, Concord has produced advertising materials, included with both the Genius Products DVDs (Exhibit 20) and Concord's Stax Soundtrack (Exhibit 21), that state: THE ORIGINAL SOUL MEN ARE AT STAX!

81.    On information and belief, neither Concord nor Stax have any direct rights to the "Sam & Dave" recording masters, their names or likeness, or the right to exploit them for promotional purposes.

82.    On information and belief, the advertising materials, which appropriate THE ORIGINAL SOUL MEN mark of the Plaintiffs, are without license or authorization.  Further, the advertising materials are intended to promote the sale of other Concord goods, none of which exclusively feature the performances of "Sam & Dave" or Sam Moore.[11]   Instead, the advertising materials promote the sale of three DVDs and seven CDs involving many other performers.  Several of the DVDs, including *Respect Yourself The Stax Story* and *The Stax/Volt Revue Live in Norway 1967*, competes directly with the sale of *The Original Soul Men Sam & Dave DVD*.   Three of the CDs have nothing to do with Soul *"Men,"* as they promote works of female performers, Angie Stone, Lalah Hathaway and Nikka Costa, and The Staple Singers (which includes three female performers).

---

[11] While some of the Concord products contain certain "Sam & Dave" performances or interviews, such performances or interviews do not convert the Concord products cited in the advertisements into works of THE ORIGINAL SOUL MEN or works authorized or licensed by THE ORIGINAL SOUL MEN.

83.     On information and belief, Concord marketing material exploits the marks and professional names of the Sam Moore, intentionally, reckless and wantonly, without license or authorization in order to promote the Stax brand.

**G.     *Defendants TWC, the Weinsteins and Genius Products Engaged in a Conspiracy with Defendant Concord to Misappropriate Plaintiffs' Marks in connection with the Distribution of Advertising Materials for Concord's Stax Soundtrack***

84.     On information and belief, Defendants TWC and the Weinsteins selected Defendant Concord to produce Concord's Stax Soundtrack.

85.     On information and belief, Defendants TWC and Genius Products had approval over all advertising materials distributed in connection with the Genius Products DVDs.

86.     On information and belief, the Defendants TWC, the Weinsteins, Genius Products and Concord were engaged in a conspiracy to access, steal, misappropriate and otherwise unlawfully obtain and use Sam Moore's professional name and persona and the Plaintiffs' marks.

87.     On information and belief, the Defendants TWC, the Weinsteins, Genius Products and Concord were engaged in a conspiracy to engage in concerted action and to compete unfair with Plaintiffs by appropriating Plaintiffs' marks.

**COUNT I**
**<u>RIGHT OF PUBLICITY</u>**
**(Against All Defendants)**

88.     Plaintiff Sam Moore re-alleges and incorporates herein the allegations the preceding Paragraphs.

89.     Since at least as early as 1967, SOUL MAN has functioned as a professional name of Sam Moore.

90.     Since at least as early as 1967, SOUL MEN has functioned as a professional name of "Sam and Dave."

91.     SOUL MAN has been used as a professional name of Sam Moore, substantially exclusively and continuously, since long prior to any actual or constructive first use of SOUL MEN by Defendants in connection with the Movie.

92.     SOUL MEN was used as a professional name of "Sam & Dave," substantially, exclusively and continuously by the Duo while Dave was alive, and then thereafter by Sam Moore, long prior to any actual or constructive first use of SOUL MEN by Defendants in connection with the Movie.

93.     Plaintiff Sam Moore has so used the professional names SOUL MAN, THE LEGENDARY SOUL MAN and THE ORIGINAL SOUL MAN that the public has come to associate this designation exclusively with Mr. Moore, such that the designation points uniquely and unmistakably to him.

94.     SOUL MEN is a close approximation of the professional name of Sam Moore and is identical to the professional name of the duo, "Sam & Dave."

95.     Since Defendants first used SOUL MEN in connection with the Movie, a connection with Sam Moore and "Sam & Dave" has been and is presumed.

96.     Beginning in the early 1960s, Plaintiff Sam Moore and the duo comprising Sam Moore and the late Dave Prater developed, both consciously and unconsciously, a particular combination of performance style, clothing style, lifestyle, musical repertoire,

physical mannerisms, and personal catchphrases. This combination of elements became integral to the professional acts and identities of Sam Moore and the duo, "Sam & Dave."

97. Plaintiffs have so used their characteristic performance style, clothing style, lifestyle, musical repertoire, physical mannerisms, and personal catchphrases that these elements have become recognized as indicia of Plaintiffs' identity, pointing uniquely and unmistakably to Sam Moore and to the duo, "Sam & Dave."

98. The main characters in Defendants' Movie are developed and portrayed, in the Movie and in advertising for the Movie, in a manner that incorporates many aspects of Plaintiffs' performance style, clothing style, lifestyle, musical repertoire, physical mannerisms, and personal catchphrases.

99. Since Defendants first used Plaintiff's indicia of identity in connection with the Movie, a connection with Sam Moore and the duo comprising Sam Moore and the late Dave Prater was, has been and is presumed.

100. Plaintiffs are not connected with Defendants or their Movie.

101. Plaintiffs have not licensed use of their professional names, image, likeness and/or personas for use in connection with the Movie, the Genius Products DVDs, or Concord's Stax Soundtrack or in advertising for these works.

102. Defendants have intentionally and knowingly misappropriated Plaintiffs' professional names, image, likeness and personas, without consent, for use in advertising their Movie in various media outlets, in violation of Plaintiffs' rights of publicity under Tennessee's Personal Rights Protection Act, Tenn. Code Ann. § 47-25-1101, *et seq.*, and Tennessee common law.

103.    Defendants have intentionally and knowingly misappropriated Plaintiffs' professional names, image, likeness and personas, without consent, for use in the Movie, in violation of Plaintiffs' rights of publicity under Tennessee's Personal Rights Protection Act, Tenn. Code Ann. § 47-25-1101, *et seq.* and Tennessee common law.

104.    By their actions alleged in this Complaint, Defendants have appropriated Sam Moore's stage names, likeness and identity for commercial exploitation in which they have a pecuniary interest.  As a result of Defendants' unlawful conduct, described herein, Plaintiffs have suffered and will continue to suffer irreparable injury unless Defendants are enjoined.

105.    Pursuant to Tennessee's Personal Rights Protection Act, Tenn. Code § 47-25-1106 and Tennessee common law, Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages and Defendants' profits, jointly and severally.

## COUNT II
## INVASION OF PRIVACY
### (Against All Defendants)

106.    Plaintiff Sam Moore re-alleges and incorporates herein the allegations in the preceding Paragraphs.

107.    Defendants' acts, as described above, constitute an invasion of Sam Moore's privacy in that they created publicity that unreasonably placed Sam Moore in a false light before the public.

108.    Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Sam Moore was placed, and as a result, Plaintiff has been caused to suffer harm to his reputation and private interest.

109. Plaintiffs are entitled to recover damages from Defendants, jointly and severally, in an amount to be determined at trial, in excess of the jurisdictional threshold.

## COUNT III
## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)
### (Against All Defendants)

110. Plaintiffs re-allege and incorporate herein the allegations in the preceding Paragraphs.

111. Since at least as early as 1967, the wording SOUL MAN has been in substantially exclusive and continuous use in commerce as a common law trademark for entertainment services and pre-recorded entertainment performances in various media, indicating that all goods and services offered thereunder originate with or are sponsored by Sam Moore.

112. Since at least as early as 1967, SOUL MEN has been in substantially exclusive and continuous use in commerce as a common law trademark for entertainment services and pre-recorded entertainment performances in various media, indicating that all goods and services offered thereunder originate with or are sponsored by Sam Moore and/or "Sam & Dave."

113. SOUL MAN has, without interruption, functioned as a mark for the goods and services of Sam Moore since long prior to any actual or constructive first use of SOUL MEN by Defendants in connection with the Movie, the Genius Products DVDs or Concord's Stax Soundtrack.

114. SOUL MEN has, without interruption, functioned as a mark for the goods and services of "Sam & Dave" since long before any actual or constructive first use of

SOUL MEN by Defendants in connection with the Movie, the Genius Products DVDs or Concord's Stax Soundtrack.

115. Plaintiffs' SOUL MEN and SOUL MAN marks are symbolic of the extensive goodwill and consumer recognition built up by the Plaintiffs through years of substantial investment in advertising and promotion, live performance, and charitable activities. Plaintiffs have so used their SOUL MEN and SOUL MAN marks in connection with entertainment services that the public has come to associate the marks exclusively with the Plaintiffs, and as indicating that the goods and services offered the marks originate with the Plaintiffs.

116. Defendants' SOUL MEN is identical in appearance, sound, and meaning to the SOUL MEN mark owned by the Plaintiffs, and is highly similar in appearance, sound, and meaning to the SOUL MAN mark owned by the Plaintiffs.

117. Since Defendants first used SOUL MEN in connection with the Movie, Genius Products DVDs and Concord's Stax Soundtrack, and Concord's use of THE ORIGINAL SOUL MEN in connection with Concord's Stax Soundtrack, and advertising for the movie, DVDs and soundtrack, a source or sponsorship connection with Plaintiffs was, has been and is presumed.

118. Plaintiffs are not connected with the Defendants or their Movie, Genius Products DVDs or Concord's Stax Soundtrack.

119. SOUL MAN, used by Plaintiffs and SOUL MEN used by Defendants are confusingly similar.

120. SOUL MEN used by Plaintiffs and SOUL MEN used by Defendants are confusingly similar.

121.   The goods and services offered under SOUL MEN by Defendants, including THE ORIGINAL SOUL MEN by Concord, are closely related to the goods and services offered by Plaintiffs under the SOUL MAN and SOUL MEN marks.

122.   The goods and services offered under SOUL MEN by Defendants, including THE ORIGINAL SOUL MEN by Concord, are closely related to the goods and services offered by Plaintiff Sam Moore under his SOUL MAN and SOUL MEN marks.

123.   The conditions surrounding the marketing of the goods and services offered under SOUL MAN by Sam Moore and the goods and services offered under SOUL MEN by Defendants, including THE ORIGINAL SOUL MEN by Concord, are such that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that they come from a common source.

124.   The conditions surrounding the marketing of the goods and services offered under SOUL MEN by Plaintiffs and the goods and services offered under SOUL MEN by Defendants, including THE ORIGINAL SOUL MEN by Concord, are such that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that they come from a common source.

125.   Defendants' continuing use of the Plaintiffs' marks in connection with the Movie, Genius Products DVDs and Concord's Stax Soundtrack, and in advertising for the movie and soundtrack, constitutes a violation of 15 U.S.C. § 1125(a) in that it creates a false designation of origin as to the goods and services advertised, distributed, offered for sale and sold by Defendants, which is likely to confuse, mislead, or deceive the consuming public by creating the false impression that the Movie has been approved,

sponsored or endorsed, or is in some way affiliated, connected or associated with Sam and Joyce Moore and/or the SJM Trust.

126.    Defendants' continuing use of Plaintiffs' marks in connection with the Movie, Genius Products DVDs and Concord's Stax Soundtrack, and in advertising for the movie and soundtrack, also constitutes a false or misleading description or representation of fact in violation of 15 U.S.C. § 1125(a), which has confused and will continue to confuse consumers as to Plaintiffs' participation in the origin, sponsorship or approval of Defendants' Movie, the Genius Products DVDs and Concord's Stax Soundtrack.

127.    Defendants' acts, as described above, have caused or are likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship or approval of the Movie, Genius Products DVDs and Concord's Stax Soundtrack, and therefore constitute unfair competition in violation of 15 U.S.C. § 1125(a).

128.    Defendants' acts, as described above, violate of 15 U.S.C. § 1125(a) as they constitute false or misleading description of fact, and/or false or misleading representation of fact in commercial advertising or promotion, and they misrepresent the nature, characteristics, qualities and origin of Defendants' commercial activities.

129.    As a result of Defendants' unlawful conduct, described herein, Plaintiffs have suffered and will continue to suffer irreparable injury unless Defendants are enjoined.

130.    Plaintiffs have no adequate remedy at law.

131.    Pursuant to 15 U.S.C. § 1117, when a violation of 15 U.S.C. § 1125(a) shall have been established in any civil action, the plaintiff in such action shall, subject to the principles of equity and the statutory limitations set forth therein, be entitled, *inter*

*alia*, to recover Defendants' profits, any damages sustained by the plaintiff, and the costs of the action, and in exceptional cases the court may award reasonable attorneys' fees to the prevailing party.

132.  Plaintiffs are entitled to recover from Defendants, jointly and severally, profits, damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1117, and are further entitled to the destruction of infringing articles as provided by 15 U.S.C. § 1118.

133.  This is an exceptional case within the meaning of 15 U.S.C. § 1117(a), because Defendants' conduct has been outrageous and its violation of Plaintiffs' rights is and has been willful.

134.  Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to an equitable remedy of an accounting, and a disgorgement, of all such wrongfully derived revenues and/or profits.

## COUNT IV
## UNFAIR AND DECEPTIVE PRACTICES UNDER TENNESSEE'S CONSUMER PROTECTION ACT
### (Against All Defendants)

135.  Plaintiffs re-allege and incorporate herein the allegations in the preceding Paragraphs.

136.  As more fully set out above, Defendants have engaged, and continue to engage, in deceptive trade practices within the meaning of the Tennessee Unfair Competition Law, codified at Tenn. Code Ann. §§ 47-18-101 *et seq.*

137.  In connection with the marketing and advertising of the Movie, the Genius Products DVDs and Concord's Stax Soundtrack, in violation of Tenn. Code Ann. §§ 47-18-101 *et seq.,* Defendants have intentionally and willfully made, published, disseminated, circulated, and placed before the purchasing public advertisements

containing false, deceptive and misleading statements about Sam Moore's affiliation, connection or association with the Movie, Genius Products DVDs and Concord's Stax Soundtrack, or certification of the Movie, Genius Products DVDs and Concord's Stax Soundtrack by Sam Moore.

138.    In connection with the marketing and advertising of the Movie, Genius Products DVDs and Concord's Stax Soundtrack, in violation of Tenn. Code Ann. § 47-18-101 *et seq.,* Defendants have intentionally and willfully caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of its goods and services, and of Defendants' affiliation, connection, association with, or certification by Plaintiff Sam Moore; and using statements or images in advertisements and film that create a false impression of the origin of the goods or services offered.

139.    The public is likely to be substantially damaged as a result of the deceptive and unfair trade practices of Defendants.

140.    Unless permanently enjoined by this Court, Defendants will continue these unfair and deceptive trade practices, thereby deceiving the public and causing Plaintiffs immediate and irreparable injury, for which they have no adequate remedy at law.

141.    In addition, Plaintiffs are entitled, pursuant to Tenn. Code Ann. § 47-18-109, to recover jointly and severally from Defendants monetary damages resulting from Defendants' unfair and deceptive acts, in an amount in excess of the jurisdictional threshold, treble damages for Defendants' willful or knowing violations of the Tennessee Unfair Competition Law, costs, disbursements and attorneys' fees incurred by Plaintiffs in this action.

**COMMON LAW UNFAIR COMPETITION**
(Against All Defendants)

142. Plaintiffs re-allege and incorporate herein the allegations in the preceding Paragraphs.

143. As described above, Defendants have engaged in false and misleading representations and omissions and engaged in deceptive conduct.

144. Defendants' conduct has already confused, caused confusion or mistake, or is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiffs, or as to the origin of Defendants' services or goods, or as to sponsorship or approval by Plaintiffs of Defendants' goods, services or commercial activities. Defendants' false and misleading representations and deceptive conduct are material in that the same were and are likely to affect consumers and prospective consumers of Sam Moore's entertainment services.

145. Because of Defendants' acts and threatened acts of unfair competition, Plaintiffs have sustained, and will continue to sustain, substantial injury, loss and damage.

146. Because of Defendants' acts and threatened acts of unfair competition, Defendants have obtained, and will continue to obtain, gains, profits and advantages to which they are not in equity or in good conscience entitled, and which have unjustly enriched Defendants.

147. Plaintiffs will suffer irreparable harm because of Defendants' conduct, and Plaintiffs are without an adequate remedy at law. Plaintiffs are entitled to an injunction restraining Defendants, their officers, directors, agents, employees, representatives and all

persons acting in concert with them from engaging in further such acts of unfair competition.

148. Plaintiffs are also entitled to recover jointly and severally from Defendants the damages Plaintiffs have sustained as a result of Defendants' acts of unfair competition, and the gains, profits and advantages that Defendants have obtained as a result of such acts, in an amount in excess of the jurisdictional threshold. Further, Plaintiffs are entitled to exemplary and punitive damages by reason of Defendants' willful, reckless, deliberate and intentional conduct.

## COUNT VI
## UNJUST ENRICHMENT
### (Against All Defendants)

149. Plaintiffs re-allege and incorporate herein the allegations of the preceding Paragraphs.

150. As a consequence of Defendants' actions, Plaintiffs have been denied from Defendants any financial compensation and credit in connection with the use of their marks and Sam Moore's public persona and likeness.

151. Defendants have gained great pecuniary benefit and have been unjustly enriched by their unauthorized use of Sam Moore's image, likeness and persona, whereas Plaintiffs have received no compensation. The circumstances are such that equity and good conscience require the Defendants to jointly and severally make restitution in an amount to be proven at trial.

## COUNT VII
## TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c)
### (Against All Defendants)

155.  Plaintiffs re-allege and incorporate herein the allegations of the preceding Paragraphs.

156.  The SOUL MEN and SOUL MAN marks are symbolic of the extensive goodwill and consumer recognition built up by Plaintiff Sam Moore through years of substantial amounts of advertising and promotion, live performance, and charitable activities.  Plaintiff Sam Moore has so used the SOUL MEN and SOUL MAN marks in connection with entertainment services that the public has come to associate the marks exclusively with Plaintiff Sam Moore, and as indicating that the goods and services offered the marks originate with Sam Moore.

157.  Plaintiffs' SOUL MEN and SOUL MAN marks are distinctive, and as a result of their prominent and continuous use, have become famous across the nation within the meaning of 15 U.S.C. § 1125(c).

158.  Defendants' use of Plaintiffs' marks began after Plaintiffs' marks achieved nationwide fame.

159  Defendants' use of Plaintiffs' famous marks is for commercial purposes.

160.  Defendants' use of Plaintiffs' famous marks has caused, and is likely to continue to cause, dilution by blurring and/or by tarnishment of the distinctive qualities of Plaintiffs' marks, and/or harm to the reputation of Plaintiffs' marks.

161. Plaintiffs are entitled, pursuant to 15 U.S.C. § 1125(c), to injunctive relief against Defendants' acts of dilution of Plaintiffs' famous marks, and to the remedies set forth in 15 U.S.C. §§ 1117(a) and 1118.

162. Plaintiffs' marks have achieved nationwide fame and are distinctive.

## COUNT VIII
## CIVIL CONSPIRACY
### (Against All Defendants)

163. Plaintiffs re-allege and incorporate herein the allegations of the preceding Paragraphs.

164. The foregoing acts of Defendants constitute a civil conspiracy in that the Defendants agreed, conspired and/or engaged in concerted action to harm Plaintiffs by the unlawful action described above through unlawful means, including but not limited to unfairly competing with Plaintiffs and to access, steal, misappropriate, and other unlawfully obtain and use Plaintiffs' proprietary rights in marks and Sam Moore's professional identity and reputation in violation of applicable federal and Tennessee law. A single plan existed among the Defendants, they all shared in the general conspiratorial objective, and they committed the overt acts described above in furtherance of the conspiracy that has injured Plaintiffs. Each conspirator had the intent to accomplish this common purpose, and each was aware of the other's intent.

165. As a result of Defendants' unlawful conduct, Plaintiffs have been and continue to be damaged in a manner that may not be able to be fully measured or compensated in economic terms, but in any event exceeds $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Sam Moore, Joyce Moore and the SJM Trust pray for the following relief:

a.  That proper process issue and be served upon Defendants;

b.  That the Court find in favor of Plaintiffs on all of their claims above;

c.  That the Weinsteins be held liable for vicarious liability and contributory infringement, in their individual capacities;

d.  That Defendants, jointly and severally, be ordered to pay Plaintiffs such damages (including actual, compensatory, consequential, treble and punitive damages, which may be cumulative, in an amount to be determined at trial in excess of the jurisdictional limit) as the trier of fact determines the Plaintiffs have sustained as a result of Defendants' acts complained of above, and to account for all gains, profits and advantages derived by Defendants through these acts, and to reimburse Plaintiffs their attorneys' fees, expenses and costs, and to pay pre- and post-judgment interest;

e.  That Defendants TWC, the Weinsteins, Genius Products and Concord be deemed to have engaged in a civil conspiracy against Plaintiffs;

f.  That the Court issue a permanent injunction enjoining Defendants, their officers, directors, agents, employees, attorneys, successors, representatives and those acting in concert with them, from infringing the Plaintiffs' rights and from further violation of federal and state law;

g.  That the Defendants be ordered to recall all copies of the Movie, Genius Products DVDs and Concord's Stax Soundtrack from all licensees or third parties authorized to perform, display or distribute the Movie, Genius Products DVDs and

Concord's Stax Soundtrack in any format, including movie theaters, video and audio distributors, television stations or networks, cable television networks and systems, radio stations and satellite radio, and Internet sites, and that such copies be destroyed;

     h.    That Defendants be ordered to pay the costs of this action;

     i.    That Defendants be ordered to publish a disclaimer with all copies, telecasts and performances of the Movie, the Genius Products DVDs and Concord's Stax Soundtrack, and all materials including posters and press releases associated with the Movie, Genius Products DVDs and Concord's Stax Soundtrack, permanently disassociating Plaintiffs from the Movie, Genius Products DVDs and Concord's Stax Soundtrack, and all materials related thereto;

     j.    That Plaintiffs be afforded the right to a trial by jury upon the trial of this matter; and

     k.    For such other and additional relief as the Court deems just and appropriate.

Dated: February 17, 2009

                           Respectfully submitted,

                      Stephen J. Zralek (BPR 19871)
                      Paul W. Kruse (BPR 13858)
                      **BONE McALLESTER NORTON PLLC**
                      511 Union Street, Suite 1600
                      Nashville, TN 37219
                      (615) 238-6300 – phone
                      (615) 238-6301 – facsimile
                      szralek@bonelaw.com
                      pkruse@bonelaw.com

*and*

Arnold P. Lutzker
Allison L. Rapp
Jeannette M. Carmadello
**Lutzker & Lutzker LLP**
1233 20th Street, NW, Suite 703
Washington, DC 20036
(202) 408-7600 - phone
(202) 408-7677 - fax
arnie@lutzker.com
allison@lutzker.com
jeannette@lutzker.com
(*pro hac vice* motions forthcoming)