IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SAMUEL DAVID MOORE, JOYCE ELLEN MOORE, and THE SJM TRUST,<br><br>    Plaintiffs,<br><br>v.<br><br>THE WEINSTEIN COMPANY LLC, d/b/a/ DIMENSION FILMS, MGM STUDIOS, INC., GENIUS PRODUCTS, LLC, CONCORD MUSIC GROUP INC.,<br><br>    Defendants. | Case No. 3:09-0166<br>Judge Trauger |

**MEMORANDUM AND ORDER**

Pending before the court is the Plaintiffs' Motion for Leave to Amend in Support of Amended Complaint filed December 17, 2010 (Docket No. 152), to which the defendants have responded in partial opposition (Docket No. 154), and the plaintiffs have filed a reply in support (Docket No. 157). For the reasons discussed herein, the plaintiffs' motion will be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

In a May 12, 2010 Memorandum that ruled on various pending motions in this case, the court summarized the facts of this dispute as alleged in the Complaint that the plaintiffs filed on February 17, 2009:

> Plaintiff Sam Moore (professionally known as "The Legendary Soul Man Sam Moore") is a well-known entertainer and was part of the popular singing duo "Sam & Dave." Plaintiff Joyce Moore is Sam Moore's wife, and plaintiff SJM Trust is a Tennessee Irrevocable Trust and is the ultimate beneficiary of the trademarks and the rights that

1

flow through and from the Moores. The defendants are various entities and individuals associated with the production and release of the motion picture *Soul Men* (the "Movie"), which was released nationally in late 2008, starring well-known actors Samuel L. Jackson and the late Bernie Mac.

The plaintiffs allege that, throughout their multi-decade performing career, Sam & Dave produced several hit songs and developed a combination of performance style, clothing style, lifestyle, musical repertoire, physical mannerisms and personal catchphrases, the combination of which became integral to the professional act and identity of Sam Moore, the surviving member of the duo. The essence of this style was "Memphis soul," and, consistent with this, Sam & Dave recorded a 1967 album titled "*Sam and Dave Soul Men*," which included the very popular and still well-known single "*Soul Man*." The plaintiffs claim that the success of this album and, particularly, the single, resulted in the "Sam & Dave" brand being forever linked with the "Soul Men" theme. . . .

The plaintiffs allege that, in 2003, defendants Harvey and Bob Weinstein[1] (brothers and well-known movie producers) became very familiar with Sam Moore while producing a documentary titled "*Only the Strong Survive*" about the 1960s soul era for their former production company, Miramax. In 2005, the Weinsteins left Miramax to start The Weinstein Company (TWC), which is also a defendant in this case.

Around February 1, 2008, Sam Moore learned from a press release issued by TWC that the Weinsteins were producing a new film titled "*Soul Men*," about a duo of African-American performers. . . . Upon reading the press release, Moore became immediately concerned that the lead characters in the Movie were being passed off as "Sam and Dave." . . . Upon seeing the script of the Movie, Moore's concerns increased. . . .

In December 2008, a retrospective DVD, titled "*The Original Soul Men Sam & Dave*," was released by the plaintiffs in the United States. In February 2009, following its run in the theaters, the "*Soul Men*" DVD was released. The plaintiffs claim that these two DVDs competed directly with each other.

The "*Soul Men*" DVD was released by defendant Genius Products. It included an insert that notified customers that they could purchase recordings by the "Original Soul Men," on defendant Concord's "Stax Soundtrack." Specifically, the insert stated that "the Original Soul Men are at Stax!" Concord does not own rights in Sam & Dave songs, and, therefore, the materials promoted are recordings by other artists. The plaintiffs allege that, by trading on the "Soul Man" theme, Concord exploited the marks and professional

---

[1] The court granted the Weinsteins' motion to dismiss on personal jurisdiction grounds in the May 12, 2010 Memorandum and accompanying Order. (Docket No. 113.)

names of Mr. Moore without license or authorization.

On February 17, 2009, the plaintiffs filed an eight-count Complaint against all defendants alleging (1) violations of the plaintiffs' "right of publicity" under the Tennessee Personal Rights Protection Act (TPRPA), T.C.A. § 47-25-1101, *et seq*. and Tennessee common law, (2) false light invasion of privacy, (3) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), (4) violations of the Tennessee Consumer Protection Act (TCPA), T.C.A. § 47-18-101, *et seq.*, (5) common law unfair competition, (6) unjust enrichment, (7) trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), and (8) civil conspiracy.
(Docket No. 112 at 2-6)(internal citations and quotations omitted).

In the May 12, 2010 Memorandum, the court denied the defendants' motion to dismiss for failure to state a claim. (*Id.* at 16-25.) Specifically, after concluding that the case was timely filed, the court considered the defendants' arguments for dismissing each count. (*Id.*) On Count III, unfair competition under the Lanham Act, the court concluded that, because "*Soul Men*" and the accompanying "Movie-related products" (the DVD, etc.) are "expressive works" subject to heightened protection under the First Amendment, the plaintiffs would not only have to make the traditional showing of trademark ownership and a "likelihood of confusion" between the plaintiff's intellectual property and the defendants' allegedly infringing material but also that the defendant's use of the "Soul Men" or "Soul Man" marks either has "no artistic relevance" or "explicitly misleads as to the source or the content of the work." (*Id.* at 18-19)(citing *Parks v. LaFace Records*, 329 F.3d 437, 451-52 (6th Cir. 2003); *ETW Corp v. Jireh Publishing, Inc.*, 332 F.3d 915, 924-28 (6th Cir. 2003); *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2nd Cir. 1989)). The court concluded that, under the facts alleged in the Complaint, this would be a very difficult showing for the plaintiffs. (*Id.* at 21.)

However, the court determined, the plaintiffs' "competing titles" argument "validates the

claim." (*Id..*) That is, the plaintiffs pointed to compelling authority holding that the heightened "expressive works" standard does not apply "to misleading titles that are confusingly similar to other titles." (*Id.* at 19-20 quoting *Rogers*, 875 F.2d at 999 n.5.) The court concluded that:

> The plaintiffs have alleged that, over the years, they introduced an album and a DVD into the marketplace, both of which were titled with the plaintiffs' "Soul Men" mark and which competed with the defendants' Movie-related products, which bore a similar title. Supported by a significant amount of case law, the plaintiffs maintain that they only need to establish that, in addition to owning the "Soul Man" mark, the public is likely to be confused by the similarity in the titles of the works at issue. The defendants' only response is to weakly claim that "competing titles" is not "what this case is about." The defendants have not shown that the "competing titles" aspect of Count III is "facially implausible" and, therefore, the court will not dismiss Count III.
> (*Id.* at 21.)

In a footnote, the court stated that the plaintiffs' Count III claim against Concord was "likely foreclosed" by the "expressive works" doctrine and by the fact that Concord did not appear to be subject to a "competing titles" argument. (*Id.*) However, as the defendants had not advanced an argument specifically directed at dismissing Count III as to Concord, the court concluded that "[s]ummary judgment is the appropriate stage for Concord to more specifically address why it should be dismissed from this case." (*Id.*) The defendants' argument for dismissing the remaining counts were either premature, not fully developed, or tied to the defendants' "expressive works" argument, and, therefore, the court denied the defendants' motion to dismiss as to the remaining counts as well. (*Id.* at 22-26.)

On December 17, 2010, the plaintiffs, without leave, filed an Amended Complaint. (Docket No. 146.) The court ordered the plaintiffs to file a motion to amend, which the plaintiffs did on January 5, 2011. (Docket Nos. 149, 152.)

The proposed Amended Complaint would (1) remove the Weinsteins as defendants, (2)

4

add a claim for state law trademark dilution, mirroring the federal claim asserted in the original Complaint, and, (3) as the plaintiffs put it, "clarify information previously stated in the Original Complaint." (Docket No. 153 at 1.)

The lone substantive challenge by the defendants here concerns additional "clarifying" allegations against Concord. In the Amended Complaint, the plaintiffs add the following allegations: (1) the "Movie could not have been made, and the invasions and infringements of Plaintiffs' rights could not have occurred, without Concord's active participation in connection with licensing musical content; permitting access to the Stax library . . . and producing and marketing of the Soundtrack;" (2) "Concord's role in licensing and granting rights to Stax . . . and in producing and marketing of the Soundtrack violates plaintiffs' rights and marks"; and (3) "through its involvement in the licensing and granting rights to Stax's library . . . to the other defendants, Concord wrongfully exploited the rights and trademarks of Plaintiffs." (Docket No. 146 at 9, 28; Docket No. 154 at 4.)

## ANALYSIS

**I.** **Motion to Amend**

In general, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P 15(a)(2). In ruling on a motion to amend, the court may consider several factors:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. . . . Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). "A motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams County Regional Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005)(internal quotation omitted). Despite these rationales for denying leave to amend, in general, the mandate that leave is to be "freely given . . . is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In support of their motion, the plaintiffs focus on the liberal standard for granting leave to amend and the fact that the additional allegations against Concord only "modestly amplify facts related to claims in the Complaint." (Docket No. 153 at 2.) The plaintiffs maintain that the "amended language is rooted in the Original Complaint, and thus the Defendants had reasonable notice about their substance." (*Id*.) The plaintiffs also note that they filed their Amended Complaint by the deadline for filing amended pleadings and that discovery is not set to close until April 1, 2011, leaving the defendants "ample opportunity to obtain additional facts regarding Plaintiffs' claims." (*Id*. at 3.)

In response, the defendants argue that the additional allegations against Concord are "meritless and irrelevant," and, therefore, this aspect of the plaintiffs' motion should be denied as futile. (Docket No. 154 at 1-2.) Specifically, the defendants argue that the "additional averments" regarding Concord are a confused attempt to state a "new and unfounded" claim against Concord, which was prompted by the court's stated concerns about the viability of claims against Concord. (*Id*. at 5.) Such a "new" claim against Concord would not be viable,

6

the defendants argue, because (1) "it would obliterate" the First Amendment protections that are afforded to those promoting expressive works, (2) the allegations regarding "permitting access to the Stax library . . . simply do not support any cause of action," and (3) any claims regarding Concord's "lawful licensing of copyrighted" materials arise exclusively under the Copyright Act and are "not supportable in this Lawsuit." (*Id.* at 6.)

In reply, the plaintiffs argue that the new averments do not attempt to make out a new, unstated claim, but only "provide clarification with respect to a number of existing counts." (Docket No. 157 at 4.) For instance, the challenged statements "directly relate to the allegation of civil conspiracy" in the Complaint and provide "more detail[] . . . linking Concord to specific conspiratorial actions" and more explanation as to how Concord "contributed to customer confusion" and engaged in "unfair competition." (*Id.*)

Viewed in this light, the court does not view the proposed addition of these allegations against Concord as futile. For instance, the elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *Kincaid v. Southtrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). By adding these allegations, the plaintiffs suggest that Concord, working in concert with the other defendants, gave them access to materials and recordings that allowed the defendants to make a movie that infringed on the plaintiffs' marks and rights. Given the elements for establishing a civil conspiracy, these additional allegations are certainly "in the ballpark" where that claim is concerned.

7

Importantly, the truth of these allegations is not the point at this stage. The issue is whether the additional allegations are futile in crafting a civil conspiracy claim. In light of this limited issue and the court's previous statement that the propriety of the claims against Concord should be evaluated at the summary judgment stage, the court, at this point, cannot conclude that the proposed amendments are futile, and, therefore, the Plaintiffs' Motion for Leave to Amend in Support of Amended Complaint filed December 17, 2010 (Docket No. 152) is **GRANTED**. The Complaint filed on December 17, 2010 (Docket No. 146) is hereby deemed the operative Complaint in this case.

It is so ordered.

Enter this 8th day of February 2011.

ALETA A. TRAUGER
United States District Judge