IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SAMUEL DAVID MOORE, <br> JOYCE ELLEN MOORE, and <br> THE SJM TRUST, <br> <br> Plaintiffs <br> <br> v. <br> <br> THE WEINSTEIN COMPANY, LLC, <br> d/b/a DIMENSION FILMS; <br> METRO-GOLDWYN-MAYER <br> STUDIOS, INC.; GENIUS <br> PRODUCTS, LLC; and CONCORD <br> MUSIC GROUP, INC., <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 3:09-cv-166 <br> Judge Trauger <br> Magistrate Judge Brown |

**MEMORANDUM AND ORDER**

Defendant Concord Music Group, Inc. ("Concord") has filed a Motion to Quash or, in the alternative, for Protective Order precluding the deposition of Norman Lear ("Lear"). (Docket Entry 194). Concord has filed a memorandum in support of its Motion. (Docket Entry 196). Plaintiffs Samuel David Moore, Joyce Ellen Moore, and The SJM Trust ("Plaintiffs") have filed a Response. (Docket Entry 212). Concord has additionally filed a Reply Brief. (Docket Entry 224). For the reasons stated below, Concord's Motion for a Protective Order precluding Lear's deposition is **GRANTED.**

**I. INTRODUCTION AND BACKGROUND**

This discovery dispute arises out of an action for right of publicity, invasion of privacy, unfair competition, unjust enrichment, trademark dilution, and civil conspiracy filed by Plaintiffs against The Weinstein Company, LLC ("Weinstein"), Metro-Goldwyn-Mayer Studios, Inc.,

1

Genius Products, LLC, and Concord (together, "Defendants"). (Pl.'s Am. Compl., Docket Entry 146). The action stems out of Dimension Films' production of the movie "Soul Men" ("Movie") and its soundtrack ("Soundtrack"), and their resemblance to the music and career of Samuel David Moore (hereinafter referred to as "Sam Moore" to distinguish from plaintiff with the same last name). *Id.* Concord, through its Stax record label which it acquired in 2005, is the producer and distributor of the Soundtrack. (*Id*. at ¶ 2).

Norman Lear is 88 years old and the current chairman and CEO of Concord. (Declaration of Norman Lear ("Lear Decl.") at 1, Docket Entry 193). In their response to Defendants' Joint First Set of Interrogatories, Plaintiffs listed Lear as a person who "may have knowledge of facts, information or circumstances related . . . to the subject matter of [their] claims." (Def.'s Ex. 7 at 2-3).[1] Plaintiffs claim that because Lear is the owner of Concord and a long time leader in the entertainment industry, he would have knowledge of the "work and reputation" of Sam Moore. (*Id.* at 3). Plaintiff also contend that Lear's position in the entertainment industry makes him uniquely qualified to provide perspective on Sam Moore's professional career and "impact and contribution to American culture." (Declaration of Joyce Ellen Moore (Pl.'s Ex. B) ("J. Moore Decl.") at ¶ 15).

Plaintiffs first subpoenaed Lear on March 22, 2011 to be deposed on May 3, 2011. (Def.'s Ex. 1 at 1). On April 21, 2011, Defendants' counsel Robb Harvey ("Harvey") sent Plaintiffs' counsel Arnold Lutzker ("Lutzker") an email stating that they were "working to accommodate" the scheduling request, after which Lutzker withdrew the deposition notice.

---

[1]All defense exhibits are those provided in its Memorandum in Support of the Motion to Quash, Docket Entry 194.

(Declaration of Arnold Lutzker ( "Lutzker Decl.") at ¶¶ 7-8). Lutzker alleges that the withdrawal was "in deference to scheduling issues" with the defendants but that he clearly intended to reschedule the deposition. (*Id.* at ¶ 8). Plaintiffs attempted to reschedule the deposition for June 23. (Def.'s Ex. 3 at 1).

On May 26, 2011, defense counsel Heather Hubbard first indicated that Concord might object to the taking of Lear's deposition. (Lutzker Decl. at ¶ 12). On May 31, 2011, Harvey had indicated to Lutzker that Lear's only available June date for the deposition would be June 23 but that he "might seek a protective order" for Lear. (Lutzker Decl. Ex. 6 at 4).[2] On June 3, 2011, an Amended Notice of Deposition for Lear was served on Concord's counsel. (Lutzker Decl. at ¶ 13). On June 2, 2011, the undersigned granted Concord leave to file this Motion to Quash. (Docket Entry 192).

Lear's career in the entertainment industry spans more than fifty years, including producing the hit shows "All in the Family," "Sanford and Son," "The Jeffersons," and many others. (Lear Decl. at ¶ 2). As Chairman of Concord, he does not participate in or manage its day-to-day activities and is generally not involved in its development or execution of specific projects. (*Id.* at ¶¶ 4-5). Lear claims to have had no involvement in Concord's negotiations with Weinstein or any other party regarding the production, acquisition of licensing of rights, marketing, advertising, or distribution of the Movie or the Soundtrack. (*Id.* at ¶¶ 6-8).

Lear and Sam Moore have met on several occasions, including at the opening of the Ray Charles Memorial Library in Los Angeles in September 2010. (*Id.* at ¶ 9). According to Sam

---

[2]The Lutzker Declaration contains ten attached exhibits. The Lutzker Declaration and attached exhibits are all marked as Plaintiff's Exhibit A in its Response to the Motion to Quash.

3

Moore's deposition, the two did not discuss the Movie or the Soundtrack at that gathering but merely took a few pictures and talked casually. (Def.'s Ex. 8 at 3). Sam Moore was never a recording artist on the Stax label but was merely "loaned" to them in the 1960's. (Def.'s Reply Br. at 3, n.4). The only other alleged meeting between Lear and Sam Moore occurred in August 2005 when the two shared a hug after a Ray Charles tribute concert. (J. Moore Decl. at ¶ 8). According to Joyce Ellen Moore, Roger Friedman, a journalist and subpoenaed deponent in this case, told her that he spoke with Lear about this lawsuit in early 2011. (*Id.* at ¶ 13).[3]

In its Initial Disclosure, Concord listed four employees as likely to have discoverable information: Collin Stanbeck, former Vice President of A&R, regarding the Soundtrack; John Baldi, Vice President of Music Publishing and Master Licensing, regarding the publishing and licensing of the Soundtrack; and Jeffrey Spector and Michelle Smith, Product Managers, regarding marketing and advertising related to the Soundtrack. (Def.'s Ex. 5 at 2-3).

## II. LEGAL ANALYSIS

Defendant Concord objects to the taking of Lear's deposition on the grounds that, as an "apex executive," Lear's deposition would be unduly burdensome, unlikely to lead to any relevant information, and unnecessary, as any pertinent information could be obtained through other employees pre-designated as potential deponents. In their response, Plaintiffs claim that Lear does possess enough relevant information to warrant his deposition and that Concord waived its right to object to taking Lear's deposition. The undersigned finds that the "apex

---

[3]Defendants have attempted to subpoena Roger Friedman as a witness based on Plaintiff's initial disclosures. He was finally served with process on Defendants' third attempt but has not yet complied with the subpoena.

doctrine" precludes Plaintiffs from taking Lear's deposition and that Concord objected to the taking of Lear's deposition in a timely manner.

A.  The "Apex Doctrine" Precludes Plaintiffs From Taking Lear's Deposition

Federal Rule of Civil Procedure ("FRCP" or "Federal Rules") 30(a)(1) allows a party to depose "any person," including a party. FED. R. CIV. P. 30(a)(1). The Federal Rules allow discovery that is "relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Discovery sought is limited to the extent that it might be "unreasonably cumulative or duplicative" or can be more easily obtained and less burdensome through another source. FED. R. CIV. P. 26(b)(2)(C)(i).

In the Sixth Circuit, the "apex doctrine" has been used to shield high-level corporate officials from unnecessary or burdensome depositions, especially for non-parties. *See HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt., Inc.*, No. 3-10-0220, 2010 WL 890874, at *4 (M.D. Tenn. Mar. 8, 2010). The doctrine protects a CEO or other executive from depositions unless that executive has "unique or special knowledge" of the facts at issue in the case and other less burdensome avenues for obtaining the discovery have been exhausted. *Id*. (holding that a non-party CEO could be deposed because he possessed unique knowledge of the case through a conference call with defendant's and third-party defendant's CEO's). Depositions of lower level employees with more intimate knowledge of facts should generally be taken first unless the party requesting the executive's deposition has demonstrated that the executive has unique personal knowledge of the matters in the lawsuit. *Zoroufie v. Lance, Inc.*, Civil No. 07-2016-B/P, 2008 WL 1767729, at *2 (W.D. Tenn. Apr. 15, 2008) (*citing Conti v. Am. Axle and Mfg., Inc.,* No. 05-72335, 2007 WL 850998, at *2 (E.D. Mich. Mar. 16, 2007)) (granting a protective order for

defendant's CEO when the CEO had no direct knowledge of the facts of the lawsuit that could not be obtained from the defendant's Rule 30(b)(6) witness).

Written depositions might be useful to provide additional information when a first oral deposition demonstrates that an executive does not have unique personal knowledge of the events at issue. *Wagner v. Novartis Pharmaceuticals Corp.*, No. 3:07-CV-129, 2007 WL 3341845, at *3 (E.D. Tenn. Nov. 8, 2007). However, the apex doctrine still protects an initial deposition, recognizing the unique position of high-level executives and the "potential for harassment and abuse inherent on subjecting them to discovery burdens." *Jones Co. Homes, LLC v. Laborers Int'l Union of North America*, No. 10-mc-50989, 2010 WL 5439747, at *2 (E.D. Mich. Dec. 28, 2010) (Slip copy).

Plaintiffs claim that Norman Lear can provide a unique perspective and opinion on Sam Moore's career in the entertainment industry, including his effect on American culture through his music and the effect that the film "Soul Men" has had on his life. (Pl.'s Resp. at 6). Specifically, Plaintiffs claim that they want to question Lear about "the damages to Mr. Moore's reputation caused by the Movie." *Id.* Because of Lear's sterling reputation and experience in the entertainment industry, Plaintiffs believe that his unique perspective will lead to material testimony regarding Sam Moore's specific reputational injury.

What Plaintiffs have overlooked regarding the apex doctrine is the need for an executive to possess unique and personal knowledge of *facts* relating to the events at issue. Lear has declared, and Concord has emphasized, that Lear had no involvement with the production, marketing, advertising, or licensing of the movie "Soul Men." (Lear Decl. at ¶¶ 6-8). Any opinions that Lear might have regarding the damage to Sam Moore's reputation are not, from the

6

factual record, based on anything other than his own opining and speculation. This lack of specific knowledge is exactly the kind of discovery abuse that the first prong of the apex doctrine was designed to protect; Lear has no specific knowledge of this project, has not spoken to Sam Moore about the project, and has no knowledge of this litigation other than a hearsay statement regarding Roger Friedman from Joyce Ellen Moore's declaration. To Plaintiffs' assertion that they should be "entitled to test the statements in [Lear's] declaration by taking his deposition," Plaintiffs are reasoning in a circle – specific knowledge of facts at issue must be shown *before* deposing an executive, not after that executive has already provided all relevant information through such a declaration. To allow Plaintiffs to depose Lear to determine whether his statements are accurate is to swallow up the apex doctrine entirely.

Furthermore, Plaintiffs have also not satisfied the second prong of the apex doctrine by showing that the testimony they seek from Lear cannot be obtained through other means. Concord has identified four of its employees likely to have specific personal knowledge of the Soundtrack and its production, marketing, advertising, and licensing. (Def.'s Ex. 5 at 2-3). To the extent that Plaintiffs are truly interested in obtaining relevant information about the Soundtrack's production and licensing, they should depose those individuals whom Concord identified in their initial disclosures. *Id.*

B.     Concord Has Not Waived Its Right to Object to the Taking of Lear's Deposition

Plaintiffs claim that Defendants waived their right to object to Lear's deposition because they only raised their formal objection after Plaintiffs had already attempted to serve Lear with a subpoena. (Pl.'s Resp. at 1). Plaintiffs claim that Concord's objection was "tardy" and that granting it would "unfairly prejudice" Plaintiffs at this stage of discovery. (*Id.* at 4). Plaintiffs

have cited no case law or procedural rules supporting their claims that Concord should have raised their objections at an earlier time.

A district court's decisions to issue a protective order are "within the broad discretion" of the district court managing the case. *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989). Concord filed its Motion for a Protective Order on June 10, 2011 (Docket Entry 194), thirteen days prior to the date Lear's deposition was to be taken. Concord advised Plaintiffs on May 26, 2011 that it was considering filing this Motion and obtained leave to do so on June 2, 2011. In light of this reasonable time frame and the undersigned's belief that Plaintiffs can obtain relevant information from sources other than Lear, Concord's objection to the taking of Lear's deposition has not unfairly prejudiced Plaintiffs.

### III. CONCLUSION

For the reasons stated above, Defendant Concord Music Group, Inc.'s Motion for a Protective Order Precluding the Deposition of Norman Lear (Docket Entry 194) is **GRANTED.** It is so **ORDERED.**

ENTERED this 12 th day of July, 2011.

/S/Joe B. Brown
Joe B. Brown
United States Magistrate Judge