IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SAMUEL DAVID MOORE, | ) | |
| JOYCE ELLEN MOORE, and | ) | |
| THE SJM TRUST, | ) | |
| | ) | No. 3:09-cv-166 |
| Plaintiffs | ) | Judge Trauger |
| | ) | Magistrate Judge Brown |
| v. | ) | |
| | ) | |
| THE WEINSTEIN COMPANY, LLC, | ) | |
| d/b/a DIMENSION FILMS; | ) | |
| METRO-GOLDWYN-MAYER | ) | |
| STUDIOS, INC.; GENIUS | ) | |
| PRODUCTS, LLC; and CONCORD | ) | |
| MUSIC GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Defendants The Weinstein Company, LLC, Metro-Goldwyn-Mayer Studios, Inc., Genius

Products, LLC, and Concord Music Group, Inc. (collectively, "Defendants") have filed a

renewed Motion to Compel discovery pursuant to Federal Rule of Civil Procedure ("FRCP" or

"Rule") 37(a)(2) and Local Rule 37.01, including documents, electronically stored information,

supplemental interrogatory responses, and deposition dates. (Docket Entry 202). Defendants

filed a Memorandum in support of this motion, identifying eleven specific requests that Plaintiffs

Samuel David Moore, Joyce Ellen Moore, and/or The SJM Trust (collectively, "Plaintiffs") have

not complied with. (Docket Entry 204). Defendants also requested that Plaintiffs pay the costs of

their motion pursuant to FRCP 37(a)(5)(A). Plaintiffs have filed a Response to this motion.

(Docket Entry 222). Defendants have filed a Reply Brief. (Docket Entry 241). For the reasons set

1

forth below, the Defendants' Motion to Compel is **GRANTED** to the extent explained below, and the Defendants' request for fees is also **GRANTED**.

Furthermore, the parties have filed a Motion to Amend Scheduling Order (Docket Entry 221), and an extension was granted by Judge Trauger to a date to be determined by the Magistrate Judge. (Docket Entry 245). The Magistrate Judge has determined that the parties' proposed discovery deadline of September 30, 2011 is acceptable, and the undersigned adopts the remaining deadlines proposed in Paragraph 5 of the Motion to Amend Scheduling Order. (Docket Entry 221). As both parties are well aware, the posturing in this case has gone on long enough, straining the eyes and patience of the Court and the dollars and sense of the individuals and attorneys involved. At some point, it all has to stop. The September 30 deadline is the final discovery extension that will be granted in this case. Plaintiffs' discovery that is compelled through this Order, and any lingering discovery that has not been produced despite previous Orders, must be produced by that date, or else the offending party forfeits the right to use that discovery for the remainder of this case, if and when it ever gets to trial.

## I. SUMMARY OF THE ISSUES

Defendants have cited eleven specific discovery requests that Plaintiffs have failed to comply with. (Docket Entry 204). To spare both parties the strain of sifting through the hundreds if not thousands of pages of documents that have to date been filed in support of this motion, the Court will briefly identify the issues raised in Defendants' Motion to Compel and summarize both parties' positions below.

1.      Plaintiffs should be required to produce all documents responsive to Document Request Nos. 43-44 and 69 related to financial information, royalties and other income.

Defendants seek documents that provide evidence of royalties or income that Plaintiffs have received from licensing any trademarks and/or "right of publicity," including tax returns and income from 2000 to the present. (Mem. in Supp. of Mot. to Compel ("Mem.") at 3-4). Defendants believe that these documents are relevant because they determine whether Plaintiffs have made money, and how much money they have made, from licensing the purported trademarks and publicity rights that they claim have been damaged by the movie *Soul Men*. *Id.* Furthermore, Defendants claim that tax returns, if they exist, must be reported in light of the Magistrate Judge's Order to produce tax returns (Docket Entry 188 at 4) on April 27, 2011. *Id.* Defendants believe that these documents are relevant to a number of defenses, including lack of enforcement and abandonment. (Defs.' Reply Br. at 3).

Plaintiffs still object to the request for royalty and tax return information because they believe the requests are overbroad and that they have sufficiently produced relevant 1099s, reports, receipts, and contracts. (Resp. to Mot. to Compel ("Resp.") at 2-7). Plaintiffs provided the Court with a laundry list of previously produced bates-numbered documents purporting to show licensing documents and agreements responsive to Defendants' requests. (*Id.* at 3-4). Plaintiffs claim that 3,100 pages of documents produced in response to requests concerning the "Sam & Dave" trademark are also responsive to these requests. (*Id.* at 5). To the extent that Plaintiffs agree that earnings from licensing agreements may be relevant, they claim a "commitment to continue to search and provide responsive information from other sources." (*Id.* at 6). Plaintiffs do not believe that they are required to produce tax returns because they are not raising claims of financial distress. *Id.*

2.      The SJM Trust has failed to provide a sufficient response to Interrogatory No. 7, related
to licensing.

Defendants have asked The SJM Trust to identify any licenses it has ever granted related

to any purported trademark in "soul man" or "soul men." (Def.'s Ex. 5 at 6).[1] The Trust's

response allegedly restated superfluous information or verbatim statements from the Complaint

without including the words "license" or "agreement." (Mem. at 5). The Trust's response makes

several mentions to licensing the "Sam & Dave" trademark, but this is unresponsive because the

interrogatory requests licensing relating to "soul man" or "soul men." *Id.*

Plaintiffs claim that their requests are perfectly adequate and that anyone familiar with

the entertainment business could assume that a "grant of rights" is in place with every

appearance and "exploitation of rights associated with movies." (Resp. at 8). Plaintiffs claim to

have not "merely reference[d]" the allegations in the Complaint. (*Id.* at 9).

3.      Plaintiffs have failed to provide a sufficient response to Interrogatory No. 10, related to
enforcement efforts.

Defendants' Interrogatory No. 10 to all plaintiffs seeks the identification of "all actions or

efforts taken by any of the Plaintiffs . . . to enforce or protect any rights asserted in any of

Plaintiffs' Purported Marks." (Def.'s Ex. 6 at 4-5). Defendants contend that Plaintiffs' answer to

this Interrogatory consists mostly of a "recitation of music history" without a straightforward

response. (Mem. at 6). Enforcement efforts cited by Plaintiffs do not relate to the purported

---

[1]No. 7 in Defendants' Joint First Set of Interrogatories to Plaintiff The SJM Trust.

trademarks, as requested by the Interrogatory, but rather focus on enforcement efforts related to Sam & Dave's "reputation and persona." *Id.*

Plaintiffs' response incorporates an example of a contract rider that precludes the use of the name "Sam & Dave" without prior written approval. (Resp. at 10). Plaintiffs cite various other efforts to protect and enforce the "Sam & Dave" trademark, including filings at the U.S. Patent and Trademark Office and a series of emails already produced. *Id.* Plaintiffs also cite a cease-and-desist letter sent to President Barack Obama's campaign to preclude him from using Sam Moore's song "Hold On I'm Comin'" without written permission. *Id.*

4.   <u>Plaintiff Joyce Moore has failed to provide a substantive response to Interrogatory No. 6, related to lawsuits and other proceedings.</u>

Defendants' Interrogatory No. 6 to Joyce Moore seeks specific information regarding her prior litigation history. (Defs.' Ex. 7 at 1-2). Mrs. Moore objected to this interrogatory on the grounds that it was irrelevant to these proceedings but did state that she had been involved in "divorce, bankruptcy, and guardianship" proceedings. (*Id.* at 2). The Magistrate Judge has already noted that Mrs. Moore's litigation history is relevant to several claims in this lawsuit, and Defendants assert that they may use this history to support potential defenses of abandonment and failure to police. (Mem. at 7-8). Defendants also claim that Mrs. Moore has not kept adequate backups of electronic records, including emails. (*Id.* at 8). Defendants point to the ESI report (Docket Entry 184) in which Plaintiffs admit that Mrs. Moore "used her discretion" in deciding which emails were relevant enough to forward to counsel. (Defs.' Reply Br. at 4). To the extent that Mrs. Moore has pursued other litigation, Defendants believe that

destruction of electronic records could be viewed as reckless or willful, which may determine an appropriate sanction.

Plaintiffs contend that the request is overbroad in the sense that it seeks information regarding an invasion of privacy claim that Mrs. Moore is not actually bringing. (Resp. at 11). Plaintiffs contend that Mrs. Moore "made backups of all her personal computers" and forwarded hundreds of emails to counsel. (*Id.* at 12).

5. <u>Plaintiffs' responses to certain of Defendants' Interrogatories and Document Request No. 71, which relate to damages, are insufficient.</u>

Defendants sent interrogatories and document requests to all three plaintiffs requesting information on the amount and calculation of their purported damages. (Mem. at 9). To date, Plaintiffs have not explained their calculation of damages in this lawsuit nor produce any supporting documents. *Id.* Defendants have been told that Plaintiffs' damages are unknown and that their "calculations are going." (Defs.' Ex. 8 at 3, Defs.' Ex. 9 at 10). Plaintiffs have also stated that they will rely on expert testimony to calculate damages. (Defs.' Ex. 2 at 7).

Plaintiffs additionally claim that their damage calculation is based in material part on what Defendants spent and earned on the movie *Soul Men*. (Resp. at 12). Plaintiffs claim that Defendants have failed to provide highly relevant financial information by not removing restrictive "Attorney's Eyes Only" designations from over one hundred documents relevant to the determination of their damages. (*Id.* at 12-13).[2]

---

[2] The protective order in this case (Docket Entry 174 Par. 17) provides a method for removing "attorney's eyes only" designations and allows this material to be shown to experts.

6.    <u>Plaintiffs should be required to provide contact information for persons identified in Plaintiffs' Initial Disclosures and Interrogatory Responses Nos. 1, 4-6 related to persons with knowledge of relevant facts.</u>

In their Initial Disclosures, Plaintiffs identified several third parties of individuals likely to have discoverable information about the case, including journalist Roger Friedman and actors Randy Jackson and Samuel L. Jackson, among other unnamed third parties. (Defs.' Ex. 8 at 2). To date, Plaintiffs have not provided the contact information of those individuals as required by FRCP 26(a)(1)(A)(i). (Mem. at 12).

Plaintiffs claim that their identification of the individuals, without contact information, is sufficient because Defendants either are already in possession of their contact information or else Defendants are in a better position to get into contact with the individuals because of their relationship to The Weinstein Company. (Resp. at 13-14). In their Response, Plaintiffs provide a list of twelve individuals, most of them famous celebrities or executives, with descriptions of how the defendants should attempt to contact them. *Id.*

7.    <u>Plaintiffs should be given a deadline, prior to Joyce Moore's deposition, to complete their search of documents, make a final production and serve a final privilege/trade secret/redaction log.</u>

Defendants began expressing concern in April 2011 regarding the inadequacy of Plaintiffs' document production. (Mem. at 13). While Plaintiffs attempted to supplement their responses, the responses "raised more questions than they answered." *Id.* Defendants pointed out that no documents had been produced related to, among other things, licenses of the purported trademarks, tax returns and royalty payments, and agreements related to licenses of past films. *Id.* At a meet and confer on May 26, Plaintiffs counsel agreed to identify documents in question

or state that all documents had been produced and that no responsive documents existed for certain issues (or that they could not be found). (*Id.* at 14). Instead of making the proper identifications, however, Plaintiffs' counsel sent a letter stating, essentially, that Plaintiffs have not had time or resources to locate documents in "dozens of file boxes that are not readily accessible" due to short staffs and hectic travel schedules. *Id.* Despite Plaintiffs' production of thousands of documents, Defendants are unimpressed by mere Google searches and multiple copies of the movie script and request a firm deadline for review and production of all documents. (*Id.* at 15).

In response, Plaintiffs again provide the court with a laundry list of produced documents purporting to relate to licenses, agreements, and royalties. (Resp. at 15-16). Plaintiffs also contend that Mrs. Moore is continuing efforts to locate financial records and that they should be allowed to amend their production under Rule 26(e)'s supplementation requirement. (*Id.* at 17). Regarding communications with the Trustee of the SJM Trust, Plaintiffs claim to have produced all responsive documents that exist. (*Id.* at 16-17).

8.  <u>Plaintiffs should be required to identify documents they contend are responsive to certain document requests when Defendants believe no such responsive documents have been produced.</u>

Upon review, Defendants believe that no responsive documents were produced for no fewer than 37 document requests despite Plaintiffs' assertions that responsive documents had already been provided. (Mem. at 15). Defendants are concerned that Plaintiffs have "creatively assigned a significance" to certain documents as being responsive, citing Plaintiffs' consideration of Sam Moore's personal appearance agreements as constituting "trademark licenses." (*Id.* at 16). Defendants request that Plaintiffs inform them which documents are

intended to be responsive to specific document requests. (*Id.* at 17). To the extent that the Court imposes a firm deadline for document production under item No. 7, Defendants contend that this request is irrelevant.

Plaintiffs' Response points out several documents that are responsive to one particular document request (Doc. Req. No. 13), and Plaintiffs subsequently loaded the Court with a 98-page file from the U.S. Patent and Trademark Office.[3] (Resp. at 18). Plaintiffs also note other documents that are allegedly responsive to Defendants' Doc. Reqs. (*Id.* at 19). Plaintiffs spend the rest of their response accusing Defendants of filing unnecessary requests simply to strain the Plaintiffs' financial resources. *Id.* Plaintiffs contend that Defendants have not made a good faith effort to narrow their requests and are not "capable of understanding the responsiveness of Plaintiffs." (*Id.* at 20).

9.   **Plaintiffs should be required to produce documents responsive to Document Request No. 94 related to other documents upon which Plaintiffs intend to rely.**

Defendants' final document request seeks all documents that Plaintiffs intend to rely on that were not produced in response to their previous 93 requests. (Mem. at 17). Defendants again withdraw this request to the extent that the Court might impose a firm deadline for document production under item No. 7. Plaintiffs believe that this request is overbroad and that they are "not in a position to identify documents not available for production." (Defs.' Ex. 2 at 9).

_____

[3]Defendants in their Reply Brief apologize for erroneously including Doc. Req. No. 13 in their list of requests under item No. 8.

10. <u>Plaintiffs have failed to produce ESI in the format provided for in the Case Management Order.</u>

The Case Management Order (Docket Entry 142) stipulated that ESI documents are to be produced in a single-page TIF format with accompanying extracted text files or in native format when converting a document to TIF "is either impossible or not practicable." (Mem. at 18, Resp. at 22). Plaintiffs allegedly produced their ESI in PDF format, versions which contain no relevant meta data for Defendants to determine whether documents have been withheld. (Defs.' Reply Br. at 9). Plaintiffs insist that producing ESI in TIF format would require the purchase and installation of Summation software and that the expense and time in doing so would be great. (Resp. at 21-22). Defendants have objected to the production of ESI in searchable PDF format but would accept production in native format per the Case Management Order, though they dispute the cost to fully comply with TIF production. (Defs.' Reply Br. at 9).

11. <u>Plaintiffs should be required to provide deposition dates for Frederick Wilhelms III and Valerie Ervin.</u>

Mr. Wilhelms and Ms. Ervin have both been identified as Trustees for The SJM Trust and were initially portrayed as parties to the lawsuit. (Mem. at 18-19). Defendants first served a deposition notice for Mr. Wilhelms in February but have been unable to take his deposition yet due to his health concerns. (*Id.* at 19). Mr. Wilhelms has submitted a declaration, but Defendants would still like to depose him regarding his knowledge of the Movie. *Id.* Defendants also submit that Ms. Ervin is required to appear for her deposition as a party to the lawsuit. *Id.*

Plaintiffs make a blanket contention that they do not "refuse" to make Mr. Wilhelms or Ms. Ervin available for depositions. (Resp. at 22-23). However, while they first maintained that both Trustees were parties to the lawsuit and represented by Plaintiffs' counsel, they now contend that both are independent parties who are not represented by counsel. (*Id.* at 23). Furthermore, Plaintiffs contend that The SJM Trust is available for deposition by Joyce Moore, its manager. *Id.* Defendants are confused as to whether or not subpoenas are now required to depose these individuals as non-parties. (Defs.' Reply Br. at 10).

12.    Defendants request fees pursuant to FRCP 37(a)(5)(A)

Defendants believe that Plaintiffs nondisclosure was not substantially justified, nor do other circumstances make an award of fees unjust, and therefore they are entitled to reasonable expenses under FRCP 37(a)(5)(A). (Mem. at 20). Defendants contend that they have made numerous attempts to obtain discovery, often receiving "excuses, empty accusations, or non-responses." *Id.* Plaintiffs even failed to abide by the undersigned's Order instructing the production of tax returns and trademark enforcement efforts. *Id.* Plaintiffs' reference to old age, extensive travel commitments, and health problems, Defendants contend, "ring hollow" in that Plaintiffs chose to file the lawsuit and have had three years to produce documents since discovering potential claims. *Id.*

Plaintiffs contend that their nondisclosure was substantially justified because Defendants' requests were "grossly overbroad," and Plaintiffs' production is responsive. (Resp. at 24). Plaintiffs believe that Defendants have "restored to twisting facts" to give an illusion that they

are not complying with court orders, actions that would represent "other circumstances" that would make an award of fees unjust. (*Id.* at 25).

## II. LEGAL ANALYSIS

A.    <u>Standard of Review</u>

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery, so long as that party has made a good faith effort to confer with the party failing to disclose. Fed. R. Civ. P. 37(a)(1). A party may move to compel for several reasons: if a party fails to make a Rule 26(a) disclosure, if a deponent fails to answer a question under Rule 30 or 31, if a party fails to answer an interrogatory under Rule 33, or if a party fails to supply documents under Rule 34. Fed. R. Civ. P. 37(a)(3). An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond. Fed. R. Civ. P. 37(a)(4).

If a party fails to obey an order to provide discovery, a court may levy sanctions, including dismissing the action in whole or in part. Fed. R. Civ. P. 37(b)(2)(A)(v). If a party has the ability to comply with a discovery order and does not, dismissal is not an abuse of discretion. *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988). However, dismissal for failure to cooperate in discovery is generally a sanction of last resort that is only imposed when a party's failure to cooperate is due to willfulness, bad faith, or fault. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). Additional factors to consider when imposing Rule 37 sanctions include whether the adversary was prejudiced by the non-cooperating party's failure to cooperate, whether the non-cooperating party was warned that

failure to cooperate could lead to dismissal, and whether less drastic sanctions were imposed or considered before dismissal was ordered. *Id.*

If a motion to compel under Rule 37 is granted, the court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A). The court will not order this payment if the responsible party's nondisclosure was substantially justified or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).


B.      Items 1-4: Plaintiffs must produce documents related to financial information, licensing, enforcement efforts, and prior litigation.

The Magistrate Judge is very concerned about the claims asserted by The SJM Trust, particularly in light of its failure to comply with the April 27, 2011 order to produce tax returns despite documented evidence of almost $50,000 in royalties from Warner Music in 2006. (Def.'s Ex. 4). Plaintiffs have cited a laundry list of concert riders and appearance agreements for Sam Moore in their Response, but have nowhere identified any specific royalties that The SJM Trust has earned regarding the *licensing* of the purported marks "soul man" and "soul men." The only substantive response seems to be four pages of "2007 1099s" listed as PL_2370-2373, which is far from a complete production. If Plaintiffs have no such documents – tax returns, royalty receipts, checks, etc. – then they should let Defendants know this. It is critical that Defendants have this information, to the extent that Plaintiffs intend to rely on it, for the purposes of calculating damages. The SJM Trust is hereby ordered to produce the information requested in

Doc Reqs. Nos. 43-44 and 69, to the extent that it exists, or inform Defendants that there are no such documents..

Regarding items 2-3 – licensing and enforcement efforts – Plaintiffs' responses are not responsive to the requests. A concert rider or appearance fee for Sam Moore is simply not a grant of rights to the trademark "soul man" or "soul men," to the extent that The SJM Trust even owns a trademark to these monikers. Protection of the "Sam & Dave" trademark, including Plaintiffs' 98-page load marked as Exhibit 2, is not responsive because Defendants are seeking documents related to "soul man" or "soul men," not "Sam & Dave." Plaintiffs either do not seem to understand what Defendants are asking for or are beating around the bush because they do not have any evidence of licensing or enforcement of the purported trademarks. The SJM Trust must produce any evidence that it has of licensing or enforcing the "soul man" or "soul men" trademarks, or admit that the evidence does not exist.

The court is very concerned that The SJM Trust has no claims in this lawsuit, despite the fact that this plaintiff is the sole reason why this case resides in the Middle District of Tennessee. Failure to further cooperate with these continuing court orders may well lead to dismissal of The SJM Trust's claims. *Bank One of Cleveland*, 916 F.2d at 1073. The Court believes that Defendants are severely prejudiced by The SJM Trust's failure to produce records relating to royalties, licensing, and enforcement and that its failure to cooperate is either due to bad faith, fault, or a continued search for a theory that does not exist. Lesser Rule 37 sanctions – the fees awarded to Defendants as a result of filing this motion – are already being levied, so therefore the court issues this as a final warning to The SJM Trust. *Bank One of Cleveland*, 916 F.2d at 1073. ***Any further failure to comply with this Court's orders (failure to produce the documents***

**by the September 30 deadline) will lead to a recommendation by the Magistrate Judge to dismissal of all claims brought by The SJM Trust.**

Regarding item the remaining items, the court appreciates the need to avoid prying into extremely personal affairs of the Plaintiffs that are unrelated to this lawsuit. Personal tax returns for Sam and Joyce Moore are not relevant to this lawsuit except to the extent that either is profiting off of licensing the purported trademarks at issue in this case. To the extent that Sam and Joyce Moore possess personal tax returns reflecting revenues from licensing these marks, they are required to produce them. Regarding Joyce Moore's litigation history, it is true that prior litigation is a matter of public record and is properly subject to inquiry through discovery. *Jackson v. Swift Transport,* 2010 WL 457481, at *2 (M.D. Tenn. Feb. 2, 2010). The court would be hesitant to compel Joyce Moore to provide her litigation history except for her assertion that she is pursuing all claims, including a false light invasion of privacy, as spouse of Sam Moore and manager of The SJM Trust. (Def.'s Reply Br. at 4). The court hereby directs Joyce Moore to provide a record of all claims that she has pursued or been involved in, both as plaintiff and defendant, on behalf of herself, Sam Moore, and The SJM Trust.[4]

The court is also troubled by the assertion that Joyce Moore has potentially failed to preserve electronic evidence that might be relevant to this lawsuit. If Mrs. Moore has been actively pursuing lawsuits on behalf of herself and others, such a failure could be deemed reckless or willful and might give rise to further sanctions. *See Clark Constr. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 138-40 (W.D. Tenn. 2005). The court at this time is reserving that

---

[4]Despite Defendants' request, this court is *not* compelling Joyce Moore to provide a record of her criminal history, if any,  unless it would be admissible under Fed. R. Evid. 403-5, 608-9.

judgment pending Mrs. Moore's production of her litigation history. Of course, if Mrs. Moore fails to provide that history by the September 30 deadline, further sanctions could arise regarding her claims, including dismissal.

C.     Items 5-6: Plaintiffs must provide information relating to damage calculation and contact information for persons identified in their Initial Disclosures.

Whether or not Defendants might have better knowledge of how to contact certain individuals does not absolve Plaintiffs from following the Federal Rules of Civil Procedure. Rule 26 governs initial disclosures and states as follows:

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties the name and, if known, ***the address and telephone number*** of each individual likely to have discoverable information . . .

Fed. R. Civ. P. 26(a)(1)(A) and 26(a)(1)(A)(i) (emphasis added). The Rules could not be more clear. Plaintiffs have identified many third-party individuals with discoverable information but have provided only Google information regarding how to contact them or, worse, directed Defendants to find the individuals themselves. The Rules do specify *if known* – Plaintiffs must provide the address and telephone number of every individual listed in their Initial Disclosures and their contact information, *if known*. Plaintiffs must provide this information to Defendants within 14 days of this order to provide ample time for Defendants to serve subpoenas and conduct depositions, if needed, prior to the September 30 deadline.

Rule 26 is also clear regarding calculation of damages. Parties must also provide, as initial disclosures, "a computation of each category of damages claimed by the disclosing party" and must disclose all documents or other evidentiary material used to make such calculations.

Fed. R. Civ. P. 26(a)(1)(A)(iii). The court respects that Plaintiffs may have to make use of expert testimony to calculate damages. However, such experts have also not yet been disclosed, at least not to the court's knowledge. Rule 26 also requires disclosure of the identity of any expert witnesses who may testify. Fed. R. Civ. P. 26(a)(2)(A). Plaintiffs have yet to put forth any theory regarding how they intend to calculate their damages. The court will allow Plaintiffs to provide a theory of computation that involves the consultation of experts, but any experts that are not disclosed by the now-adopted October 7, 2011 deadline will not be allowed to testify or provide any other evidence per Rule 37. Fed. R. Civ. P. 37(c)(1).

D.      Items 7-9: Plaintiffs must produce their full document search and final production log by August 31, 2011.

Rule 34 allows objections to document requests that are overbroad or unrelated to claim and defenses. Fed. R. Civ. P. 34(b)(2)(C). It does not allow parties to drag their feet and fail to respond to document requests on the grounds of being fatigued or overworked. The court agrees with the Defendants that enough is enough. Plaintiffs have been sending cease-and-desist letters for over two years, plenty of time for them to sift through their files to produce relevant emails, financial documents, trustee communications, and other documents that have been requested but not produced. While the court sympathizes with Plaintiffs' fatigue and short staffs, Plaintiffs should have known what they were getting into when they filed this lawsuit. To fail to participate in discovery is unacceptable, and Defendants should not be prejudiced by this unreasonable delay.

The court also agrees with the Defendants that a firm deadline would obviate requests Nos. 8 and 9 related to Plaintiffs' identification of responsive documents and response to Doc. Req. No. 94. Plaintiffs must complete their search for documents and produce a final production log for Defendants by August 31, 2011 – 30 days before the close of fact discovery and with enough time for Defendants to review before deposing Joyce Moore and The SJM Trust. Any documents not produced by that time may not be introduced into evidence or relied upon in the remainder of this lawsuit. Fed. R. Civ. P. 37(b)(2)(A)(ii).

E.     Items 10-11: Plaintiffs must comply with the CMO, producing ESI in the proper format, and provide deposition dates for Frederick Wilhelms and Valerie Ervin.

The Case Management Order provides two alternatives for producing ESI: single-page TIF format or native format.[5] Plaintiffs have chosen not to comply with this, instead producing ESI in searchable PDF format. Defendants dispute the cost to fully comply with the CMO by producing documents in TIF format, but this court is not going to undertake to obtain documents supporting this assertion. Plaintiffs may produce ESI in native format to the extent that TIF format is not practicable, but must do so by August 31, 2011, the deadline for hard document production. Any ESI not produced by this date may not be relied upon in the remainder of this lawsuit. Fed. R. Civ. P. 37(b)(2)(A)(ii).

The court is at a loss for words regarding Plaintiffs' constant flip-flopping over the status of the supposed "Trustees" in this case. Plaintiffs now claim that the trustees are not parties to this lawsuit and should therefore be subpoenaed independent of Plaintiffs' counsel. (Def.'s Reply

---

[5]Unfortunately both sides initially failed to appoint the proper people to carry out ESI duties and the case has suffered as a result.

Br. at 10). If this trust is legitimate, then Plaintiffs is obligated to provide for the deposition of its trustees. Plaintiffs must provide deposition dates for its trustees, Frederick Wilhelms and Valerie Ervin, by August 17, 2011. Failure to provide for a proper deposition date may result in The SJM Trust's claims being dismissed for failure to comply with this discovery order. Fed. R. Civ. P. 37(b)(2)(A)(v); *See Bank One of Cleveland,* 916 F.2d 1073.


F.      Defendants are entitled to fees under Rule 37(a)(5)(A).

If a motion to compel under Rule 37(a)(3)(A) is granted, the court must require the offending party to pay the movant's reasonable expenses. Fed. R. Civ. P. 37(a)(5)(A). This is subject to three exceptions, two of which can be considered here: the offending party's nondisclosure was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Plaintiffs argue that their nondisclosure was substantially justified based on their view that Defendants' requests are overbroad, their current production is responsive, and they have acknowledged their obligation to supplement their responses if and when additional documents are located. These arguments ring hollow in light of Plaintiffs' failure to comply with court orders three months ago compelling the production of tax returns and format of ESI, among others. Furthermore, the Court agrees with Defendants that much of Plaintiffs' delay is a simple stall tactic, a "lawsuit in search of a theory." The Court hopes that this final deadline and threat of dismissal will finally urge the Plaintiffs to comply with these outstanding discovery requests.

# III. CONCLUSION

For the reasons and to the extent stated above, Defendants' Motion to Compel (Docket Entry 202) is **GRANTED**, and its motion for fees under Rule 37(a)(5)(A) is also **GRANTED.** Defendants should submit a request for **reasonable** fees within 28 days of this order. Plaintiff will have 14 days to object. There will be no reply unless requested by the court.

In summary, this order imposes the following deadlines, including those proposed in the Motion to Amend Scheduling Order (Docket Entry 221):

August 17, 2011: Plaintiff will provide addresses and contact information for third parties identified under Rule 26.

August 17, 2011: Plaintiff will provide deposition dates for Frederick Wilhelms and Valerie Ervin.

August 31, 2011: Plaintiffs must produce all ESI in the proper format as outlined in the CMO of August 23, 2010 (Docket Entry 142).

August 31, 2011: Plaintiffs must complete their search for documents and produce a final production log.

September 30, 2011: Close of fact discovery. Plaintiffs must provide Mrs. Moore's litigation history and admissible criminal history by this deadline.

October 7, 2011: Plaintiffs' expert disclosures due.

November 11, 2011: Deadline for Defendants' deposition of Plaintiffs' expert witnesses

November 25, 2011: Defendants' expert disclosures due.

December 23, 2011: Deadline for Plaintiffs' deposition of Defendants' expert witnesses

January 2, 2012: Second Joint Mediation Report.

January 13, 2012: Dispositive motions due.

February 17, 2012: Responses to dispositive motions due.

March 2, 2012: Replies to responses to dispositive motions due.[6]

On or after June 5, 2012: Targeted trial date.

It is so **ORDERED**.

ENTERED this 3rd day of August, 2011.

/S/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge

---

[6] If motions are filed early the response and reply deadlines are moved up accordingly.