# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SAMUEL DAVID MOORE, JOYCE ELLEN MOORE, and THE SJM TRUST, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 3:09-CV-00166 |
| v. | ) ) | |
| | ) | Judge Aleta A. Trauger |
| THE WEINSTEIN COMPANY, LLC, doing business as DIMENSION FILMS; METRO-GOLDWYN-MAYER STUDIOS, INC.; GENIUS PRODUCTS, LLC; and CONCORD MUSIC GROUP, INC. | ) ) ) ) ) | Magistrate Judge Brown |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is the plaintiffs' Motion for Review (Docket No. 348), to which the defendants have filed a Response in opposition (Docket No. 361). For the reasons stated herein, the Motion for Review will be granted in part and denied in part.

## BACKGROUND

### I.    Overview

Plaintiff Samuel David Moore, along with Dave Prater, was part of the popular singing duo, "Sam & Dave," which released the songs "Soul Man" and "Hold On', I'm Comin'" in the 1960's. Sam & Dave ceased performing together by the 1980's and, although Prater died in 1988, Sam Moore continues to perform and make celebrity appearances, at times holding himself out as "the Soul Man," "The Legendary Soul Man," or some variation thereof. Sam Moore, his wife Joyce Moore, and The SJM Trust (collectively, "plaintiffs") claim to possess intellectual property rights in several unregistered trademarks, including the terms "Soul Man," "The

1

Legendary Soul Man," and "The Original Soul Man," each of which invoke the Sam & Dave song and albums that utilized the term "Soul Man."

In 2008, defendant The Weinstein Company LLC, d/b/a Dimension Films ("TWC") released a feature film called *Soul Men*, starring Samuel L. Jackson and Bernie Mac. Broadly, the movie concerns a pair of estranged soul music backup singers, who reunite to take a cross-country road trip to attend the funeral of their former lead singer. Pursuant to contractual agreements with TWC and/or its affiliates, defendant Metro-Goldwyn Mayer Studios, Inc. distributed *Soul Men* in theaters nationwide, defendant Genius Products, LLC distributed a DVD version of the movie (following its brief theatrical run), and Concord Music Group, Inc. distributed the *Soul Men Original Motion Picture Soundtrack*.

In this lawsuit, the plaintiffs broadly allege that the defendants violated their intellectual property, publicity, and/or privacy rights by producing and/or distributing *Soul Men* and its soundtrack. They allege, *inter alia*, that *Soul Men* was in fact based on the history of "Sam & Dave" and painted them in a false light, sought to capitalize on the alleged "Soul Man"-related marks without permission, improperly competed with certain of Sam Moore's works, and otherwise diluted the plaintiffs' interests in the alleged marks.

In the First Amended Complaint, the plaintiffs alleged that Joyce Moore was a "co-owner of the rights referenced" in the First Amended Complaint, that "Plaintiff SJM Trust is a Tennessee Irrevocable Trust," and that The SJM Trust "is the ultimate beneficiary of the trademarks and the rights that flow through and from the Moores." (Docket No. 146 ("First Am. Compl.") ¶¶ 1 and 23.) The plaintiffs also alleged that they collectively own the intellectual property rights being asserted. (*See, e.g.*, First. Am. ¶¶ 76 ("Despite actual knowledge of the

Plaintiffs' request to not infringe on *their rights*, the Weinsteins proceeded ahead without ever

obtaining Plaintiffs' consent or a license."); 116 ("Defendants' SOUL MEN is identical in

appearance, sound, and meaning to the SOUL MEN mark *owned by the Plaintiffs*, and is highly

similar in appearance, sound, and meaning to the SOUL MEN mark owned by the Plaintiffs.");

and 126 (referencing confusion generated by defendants' alleged "continuing use of *Plaintiffs'*

*marks*") (all emphases added).)   Furthermore, the plaintiffs alleged that they had continuously

utilized the "Soul Man"-related marks in connection with Sam Moore's performances.  (*See,*

*e.g.*, *id.* ¶ 113) ("SOUL MAN has, without interruption, functioned as a mark for the goods and

services of Sam Moore . . . .")[1]

## II.   <u>Motions Presented for Review</u>

During the course of a remarkably contentious discovery process, the Magistrate Judge

made the following four decisions that are the subject of the Motion for Review:

> (1)    In a February 2, 2012 Order (Docket No. 323 ("2/2/12 MJ Order"))
> concerning the defendants' pending Application for Fees and pending
> Motion for Sanctions,[2] the Magistrate Judge:

---

[1] The plaintiffs' original Complaint (Docket No. 1) contained, in relevant part, essentially the same allegations.

[2] The 2/2/12 MJ Order reflected the culmination of a series of rulings stretching back to early 2011, when the Magistrate Judge considered the defendants' initial Motion to Compel (Docket No. 180), which had been filed on March 23, 2011.  In a March 30, 2011 Order denying the Motion to Compel without prejudice (Docket No. 183), the Magistrate Judge expressed frustration with the pace of discovery efforts to that point and granted the defendants leave to file a renewed Motion to Compel no sooner than 14 days from the date of the order.  After the plaintiffs continued to resist their discovery obligations, the defendants accordingly filed a Renewed Motion to Compel on June 21, 2011 (Docket No. 202), which included a request for attorney's fees.  In an August 3, 2011 Order ( (Docket No. 247 ("8/3/11 MJ Order")), the Magistrate Judge granted the Renewed Motion to Compel, granted the associated request for fees, and ordered the defendants to file an Application for Fees.  The defendants accordingly filed an Application for Fees (Docket No. 255), which the plaintiffs opposed (Docket No. 257).

(a)      ordered the plaintiffs to pay the defendants $17,513.50 in attorney's fees as a discovery sanction; and

(b)      granted the Motion for Sanctions and accordingly recommended that: (1) the defendants "are entitled to an adverse inference with regard to Plaintiffs' claim that they received income from the intellectual property asserted in the lawsuit"; and (2) the plaintiffs be precluded from relying on any records not produced as of the date of the Order (*i.e.*, February 2, 2012);

(2)      In a February 3, 2012 Order (Docket No. 324 ("2/3/12 MJ Order")) concerning the plaintiffs' pending Motion to Amend the First Amended Complaint and Renewed Motion to Compel Reclassification of Confidentiality Designations and Production of Non-Redacted Documents ("Motion to Compel Reclassification/Non-Redacted Documents"),[3] the Magistrate Judge:

(a)      Denied the Motion to Amend the First Amended Complaint; and

(b)      Granted in part and denied in part the Motion to Compel Reclassification/Non-Redacted Documents.

---

While the Application for Fees was pending, the defendants also filed a Motion for Sanctions (Docket No. 259) related to the plaintiffs' continuing discovery violations, which the plaintiffs opposed (Docket No. 271), and the defendants filed a Reply (Docket No. 276). The 2/2/12 MJ Order resolved both the Application for Fees and the Motion for Sanctions.

[3]The 2/3/12 Order similarly resolved a long-pending dispute between the parties. On June 28, 2011, the plaintiffs filed an initial Motion to Compel Reclassification/Non-Redacted Documents (Docket No. 216), which the defendants opposed (Docket No. 232), and the plaintiffs filed a Reply (Docket No. 246). In an August 17, 2011 Order, the Magistrate Judge denied the plaintiffs' Motion to Compel Reclassification/Non-Redacted Documents. (*See* Docket No. 248 (initial order) and 250 (clarification of Order).) After the close of discovery, the plaintiffs filed a Renewed Motion to Compel Reclassification/Non-Redacted Documents (Docket No. 279), which the defendants opposed (Docket No. 291).

On November 22, 2011 – after the close of fact discovery – the plaintiffs also filed a Motion for Leave to Amend the First Amended Complaint (Docket No. 277), which the defendants opposed (Docket No. 284), and the plaintiffs filed a Reply (Docket No. 290). The 2/3/12 MJ Order resolved both the Motion to Amend and the Renewed Motion to Compel Reclassification/Non-Redacted Documents.

Within 14 days of each of these orders, the plaintiffs filed a Motion for Reconsideration and Clarification of the 2/2/12 MJ Order (Docket No. 330) and a Motion for Reconsideration of the 2/3/12 MJ Order (Docket No. 331). On February 22, 2012, the Magistrate Judge issued a consolidated order denying both motions. (Docket No. 333 ("2/22/12 MJ Order Denying Reconsideration").)

On March 7, 2012, 14 days from the date of denial of the 2/22/12 MJ Order Denying Reconsideration, the plaintiffs filed the instant Motion for Review, which seeks relief from the Magistrate Judge's refusal to reconsider his previous decisions concerning the Application for Fees, the defendants' Renewed Motion to Compel, the plaintiffs' Motion to Amend, and the plaintiffs' Renewed Motion to Compel Reclassification/Non-Redacted Documents.

Although the plaintiffs have characterized the instant motion as a "Motion for Review" pursuant to Rule 72 and Local Rule 72.02(b), the court is concerned that the plaintiffs reflexively sought "reconsideration" by the Magistrate Judge of his 2/2/12 and 2/3/12 Orders in the first instance, thereby affording themselves "two bites at the apple" and an extra 14 days to seek review. Nevertheless, as described herein, one of the arguments raised in the Motions for Reconsideration is, in part, meritorious. Also, aside from pointing out the peculiar procedural posture of the instant motion, the defendants do not request denial of the Motion for Review on this basis and instead address the underlying merits of the 2/2/12 MJ Order, the 2/3/12 MJ Order, and the 2/22/12 MJ Order Denying Reconsideration. Under these circumstances, the court will address the merits of the arguments raised by the plaintiffs in support of their Motion for Review, to the extent those arguments were properly preserved below.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b), a district court may modify a Magistrate Judge's ruling on non-dispositive preliminary matters only where that ruling is "clearly erroneous or contrary to law." This is a "limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993). A ruling is clearly erroneous "where it is against the clear weight of the evidence or where the court is of the definite and firm conviction that a mistake has been made." *Galbraith v. N. Telecom, Inc.*, 944 F.2d 275, 281 (6th Cir. 1991) (internal citations omitted). The test is "not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one the reviewing court would draw. Rather the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of the evidence is a reasonable one." *Heights Cmt'y Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

## ANALYSIS

### I.     Fee Award

In their Renewed Motion to Compel, the defendants identified various discovery abuses by the plaintiffs, including, *inter alia*, their continued failure to provide meaningful information regarding alleged licensing and enforcement efforts, their damages, and the nature of The SJM Trust. The defendants demanded certain discovery sanctions and/or an award of reasonable attorney's fees pursuant to Fed. R. Civ. P. 37(a)(5)(a) and 37(c)(1). In granting the Renewed Motion to Compel (Docket No. 247), the Magistrate Judge admonished the plaintiffs for "drag[ging] their feet and [fail]ing to respond to document requests," finding that "enough is enough." (Docket No. 247 at p. 17.) The Magistrate Judge found that, as the defendants had argued, the plaintiffs had continued to provide evasive/non-responsive information to the

defendants on relevant issues (*see, e.g.*, *id.* at pp. 14 (as to interrogatories regarding licensing and enforcement efforts, "Plaintiffs' responses are not responsive to the requests . . . .")) and had failed to comply with his previous discovery orders. (*Id.* at p. 19.) In particular, as to discovery concerning The SJM Trust, he found that the plaintiffs' foot-dragging was "either due to bad faith, fault, or a continued search for a theory that does not exist," and he was "very concerned that The SJM Trust has no claims in this lawsuit . . . ." (*Id.* at p. 14.) As a sanction for the plaintiffs' continued discovery abuses, the Magistrate Judge found that the defendants were entitled to fees pursuant to Rule 37(a)(5)(A). He explicitly warned the plaintiffs that continued failure to participate in discovery in violation of the court's discovery orders would lead to additional sanctions.[4] Having granted the Motion to Compel, the Magistrate Judge ordered the defendants to file an Application for Fees with supporting documentation.

The defendants accordingly submitted an Application for Fees supported by the Declaration of Robb Harvey (Docket No. 256), which attached billing records reflecting approximately 68 hours of work allegedly "incurred in connection with their Renewed Motion to Compel" (*id.* at ¶ 4 and Ex. 1) and 25 hours of work preparing the Application itself (*id.* at ¶ 4 and Ex. 2). The defendants' Application requested reimbursement at the following rates: Robb Harvey - $400; Heather Hubbard - $270; Emily Zibart - $210; David C. Scott - $200; and Jeana Clark (paralegal) - $160. With respect to time spent on the Renewed Motion to Compel, the

---

[4]*See, e.g.*, 8/3/11 Order at pp. 14-15 (issuing a "final warning" to The SJM Trust that continued failure to produce records relating to alleged royalties, licensing, and enforcement would lead to a recommendation of dismissal), 18 (stating that, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii), plaintiffs will be precluded from relying on documents not produced by August 31, 2011), and 19 (stating that, if plaintiffs continued to refuse to provide proper deposition dates for the trustees, The SJM Trust could be dismissed pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v)).

application listed time entries between April 11, 2011 and July 15, 2011, the date on which the defendants filed their Reply Brief concerning the Renewed Motion to Compel.

The plaintiffs opposed the requested fee award, essentially arguing that (a) no fees should have been awarded in the first place;[5] (b) the total reimbursable hours should be reduced because the time spent was excessive, redundant, and/or not directly related to the Renewed Motion to Compel; (c) the billing entries were insufficiently detailed and/or improperly reflected "block billing"; and/or (d) the rates demanded were unreasonable. The plaintiffs did not file itemized objections to specific time entries. Instead, they identified examples of the types of allegedly improper billing entries and left the Magistrate Judge to extrapolate from those examples to the remainder of the billing entries. Also, the plaintiffs did not state that time entries for any particular month should be summarily disallowed.

The Magistrate Judge granted the defendants' Application, but sustained some of the plaintiffs' objections, as follows: he disallowed three time entries totaling 2.9 hours as insufficiently detailed and/or reflecting work that would have been performed regardless (*see* 2/2/12 MJ Order at p. 2, n.2),[6] reduced the reimbursable attorney time for preparing the Application to just two hours (rather than the approximately 25 hours requested), and, pursuant this court's analogous decision in *Cummings, Inc. v. BP Prods. N.A., Inc.*, No. 3:06-0890, 3:07-0834, 2010 WL 796825, at *4 n.3 (M.D. Tenn. Mar. 3, 2010), reduced the hourly rates for

---

[5]The Magistrate Judge did not intend for the parties to reargue this point, but both parties did so regardless. The Magistrate Judge summarily refused to reconsider his prior decision to award fees. (2/2/12 MJ Order at p. 2.)

[6]For example, the Magistrate Judge disallowed a May 9, 2011 Zibart entry reflecting time spent "conduct[ing] preliminary review of additional documents produced by Plaintiffs in order to determine document requests for which no response has been provided."

Hubbard to $255, Zibart to $200, and Scott to $180.[7]  After factoring in these reductions, the

Magistrate Judge ordered the plaintiffs to pay the defendants $17,513.50.[8]

**B.     Challenge to the denial of Reconsideration of the Fee Application**.

The plaintiffs challenge the Magistrate Judge's refusal to reconsider his decision

concerning the Application for Fees on two grounds: (1) the fees should not have been awarded

in the first place; and (2) the refusal to disallow additional time entries manifested clear error.

1.     Whether the Fee Sanction Was Justified

As to the first argument, it is both untimely and entirely without merit.  First, the

Magistrate Judge granted the defendants' request for fees on August 3, 2011.  Although the

plaintiffs have sought to re-argue this issue to the Magistrate Judge multiple times (*see* Docket

No. 257 at pp. 2-8;[9] Docket No. 331 at p. 2, n.1), they did not seek this court's review of the

underlying 8/3/11 MJ Order for nearly nine months.  Thus, the request for relief from that order

_____

[7]It appears that the defendants only sought reimbursement for time spent by its paralegal relative to preparing the Application for Fees itself.  Because the Magistrate Judge ultimately reduced the award relative to the Application for Fees to just two total hours at an aggregated rate, the Magistrate Judge did not need to address the reasonableness of awarding $160 per hour for paralegal work.  The court notes that it would not typically reimburse a party for paralegal work at a rate of $160 per hour.

[8]The Magistrate Judge calculated that the defendants were entitled to reimbursement for 65.5 reimbursable hours associated with the Renewed Motion to Compel, which amounted to $16,995.50 after applying the rates for each attorney to the associated hours worked, for an aggregated rate of approximately $259 per hour (*i.e.*, $16,995.50 divided by 65.5).  With respect to the two hours of reimbursable time preparing the Application for Fees, the Magistrate Judge applied the aggregated rate of $259, for a total of $518.

[9]Incredibly, in opposing the Application for Fees, the plaintiffs argued to the Magistrate Judge that they "were not sufficiently warned that their discovery responses could lead to sanctions."  (Docket No. 257 at pp. 6.)  Of course, even absent specific warnings from the court, the plaintiffs were under a continuing obligation to provide timely, accurate, and complete responses to discovery.

is plainly untimely.

Regardless, having reviewed the record in detail, the court agrees with the merits of the 8/3/11 MJ Order, which properly sanctioned the plaintiffs for refusing to comply with their discovery obligations.  In particular, the plaintiffs' allegations that The SJM Trust had an ownership interest in the alleged intellectual property rights at issue appear to have been false,[10] the plaintiffs had disobeyed a court order to produce tax returns (or to "stop beating around the bush" and state that no such records existed) (*see* Docket No. 188, 4/27/11 MJ Order), and the plaintiffs still had not provided complete responses to discovery requests that had been pending for nearly a year.  The plaintiffs had also engaged in a host of other discovery abuses, including refusing to provide contact information for individuals identified in their Rule 26 initial disclosures, failing to provide Electronically Stored Information ("ESI") in the format specified by the Case Management Order, continuing to provide non-responsive answers to requests relating to licensing and enforcement efforts, generally "dragging their feet" on producing records, and engaging in "constant flip-flopping" regarding the status of the supposed Trustees in the case, leaving the Magistrate Judge "at a loss for words."  (*See* 8/3/11 MJ Order at p. 18.)  As confirmed by later discovery, the plaintiffs were essentially leading the defendants and the court in circles for information concerning their alleged branding/licensing efforts, enforcement efforts, and alleged damages.

Under these circumstances, the Magistrate Judge properly found that the defendants were

---

[10]Furthermore, although the Complaint stated that The SJM Trust was a "Tennessee Irrevocable Trust," the face of the trust agreement states that it is, in fact, an *Arizona* irrevocable trust.  Because The SJM Trust was the only alleged Tennessee resident party, that fact is significant as to jurisdiction and choice of law.

entitled to fees pursuant to Rule 37(a)(5)(a), which provides that, if a motion to compel is granted, the court may award "reasonable expenses incurred in making the motion, including attorney's fees."[11]

2.     Whether the Award of Fees Was Properly Calculated

In their Motion for Review, the plaintiffs challenge the assessment of hours relative to the Renewed Motion to Compel, but not the reduced rates applied by the Magistrate Judge, the reduced award of two hours of attorney time relative to the Application for Fees, or the manner in which the Magistrate Judge calculated the fees associated with preparing the Application.[12]

As an initial matter, two of the plaintiffs' arguments in the Motion for Review were not properly preserved. First, the plaintiffs argue that some of the time entries reflect time spent dealing with defendants' discovery deficiencies, instead of, or in addition to, time spent on plaintiffs' deficiencies. Second, the plaintiffs argue that it was *per se* inappropriate to allow any time entries reflecting work performed "nearly three months" before the Renewed Motion to Compel was filed. The plaintiffs did not raise either of these arguments in opposing the Application for Fees, even though all of the relevant information was available to them at the time. Therefore, these arguments were not properly preserved and will be summarily rejected. However, the court will consider whether any fees, including fees for time spent several months before the Renewed Motion to Compel was filed, should have been disallowed on properly

_____

[11]With respect to the Renewed Motion to Compel, it appears that the Magistrate Judge could have issued sanctions pursuant to Fed. R. Civ. P. 37(b)(2), which provides broad sanctions for failing to comply with discovery orders, but he did not do so.

[12]As the defendants point out, they could have sought review of these aspects of the Magistrate Judge's decision, which significantly reduced the total fee award, but did not.

preserved grounds, such as lack of relatedness to the Renewed Motion to Compel.

Having considered the plaintiffs' objections, the court agrees with the plaintiffs that, relative to a handful of time entries, the Magistrate Judge should have reconsidered his decision and disallowed additional entries.  First, it was inconsistent for the Magistrate Judge to disallow the May 9, 2011 Zibart entry without disallowing three other entries that similarly reflected work that would have been performed regardless of the plaintiffs' discovery deficiencies.  *See* 5/9/11 Hubbard - 1.0 ("Review additional discovery response letter from A. Lutzker and coordinate efforts to upload and review documents and analyze revised discovery responses"); 5/9/11 Hubbard - 1.1 ("review additional documents and responses to document requests produced by Plaintiffs"); 5/10/11 Zibart - 0.7 ("Review plaintiffs' supplemental discovery responses to requests for documents and identify issues therein").  Second, two entries do not contain sufficient detail to demonstrate relatedness to the plaintiffs' discovery deficiencies necessitating the Renewed Motion to Compel.  *See* 4/26/11 Hubbard - 0.2 ("follow up on outstanding discovery"); 5/26/11 Harvey - 1.9 ("Work on discovery dispute issues.")

As to the remaining time entries, the court finds the plaintiffs' objections to be without merit.  First, the defendants provided itemized billing entries, not block billing.  Second, except as noted above, it was not clear error for the Magistrate Judge to find that none of the challenged entries reflected redundant and/or duplicative entries.  Third, it was not clear error for the Magistrate Judge to allow entries for time spent on tasks other than specifically researching and drafting the Renewed Motion to Compel.  First, the plaintiffs have not shown that only hours spent on researching and drafting a Motion to Compel constitute time spent "making the motion" for purposes of Rule 37(a)(5)(A), a position for which they provide no case law authority.  To

the contrary, district courts within the Sixth Circuit have found that, under appropriate circumstances, fees for time spent on certain activities other than researching and drafting the motion *are* recoverable under Rule 37(a)(5)(A), because good faith efforts to identify and resolve discovery disputes are a necessary precondition to recovering expenses and attorney's fees for an opposing party's discovery failures.[13]

Furthermore, here the Magistrate Judge originally deferred decision on the issues raised by the original Motion to Compel, presumably in the hope that the plaintiffs would honor their discovery obligations without further court intervention. Had the plaintiffs honored those obligations, the issue would not have come before this court again. Instead, the plaintiffs chose to engage in a campaign of delay and obfuscation, requiring the defendants to expend significant good-faith efforts "policing" the plaintiffs before being forced to renew the Motion to Compel to the obtain the long-requested discovery. Accordingly, it was not clear error for the Magistrate Judge to find that, under the exceptional circumstances presented by this case, efforts undertaken with respect to the initial Motion to Compel and/or as a necessary precursor to the Renewed Motion to Compel were properly reimbursable pursuant to Rule 37(a)(5)(a).

---

[13]*See J4 Promotions, Inc. v. Splash Dogs, LLC, et al.*, No. 2:09-cv-136, 2010 WL 2162901, at *3-*4 (S.D. Ohio May 25, 2010) (reimbursing plaintiff for "hours [plaintiff's counsel] spent on efforts to obtain the requested discovery before he filed the motion to compel"); *JP Morgan Chase Bank, N.A. v. Neovi,* Inc., No. 2:06-CV-0095, 2007 WL 781648, at *4 (S.D. Ohio Mar. 12, 2007) (awarding fees related to attempts to obtain supplemental responses to interrogatories without judicial involvement, because engaging in these good-faith efforts was a necessary precondition to recovering its expenses and therefore constituted the "reasonable expenses incurred in making the motion" under Rule 37(a)(5)); *see also* Local Rule 37.01(b)(3) ("Counsel for party moving to compel discovery . . . shall file with the Court . . . a statement certifying that the he has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised . . . ."); Docket No. 201 at p. 2 (Local Rule 37.01(b) Certification in support of Renewed Motion to Compel).

In sum, the court will disallow four additional time entries totaling $1,486.50,[14] but will uphold the Magistrate Judge's decision regarding the Application for Fees in all other respects. This reduces the recovery relative to the Renewed to Motion to Compel from $16,995.50 to $15,509.00. Because this adjustment reduces the aggregate hourly rate from $259 to $256 per hour, the court will also reduce the award for preparing the Application for Fees itself from $518 to $512. Accordingly, the plaintiffs will be ordered to pay the defendants $16,021.00.

## II.    Rule 37(b)(2)(C) Sanctions

### A.    Magistrate's Judge Recommendations Regarding Sanctions

In their Motion for Sanctions, the defendants argued that, in violation of the court's orders, the plaintiffs had failed to search for and produce all responsive records by a court-ordered September 1, 2011 deadline and had improperly continued to withhold tax returns and accounting records, among various other discovery deficiencies. In particular, the plaintiffs still had not produced any tax returns or complete accounting records to show income and expenses related to the alleged trademarks, rights of publicity, appearances, or other rights asserted in the lawsuit.[15] The defendants further argued that the plaintiffs had simply failed to provide, by interrogatory response or deposition testimony, any indication of what they were seeking in

---

[14]The court calculates the $1,486.50 deduction as follows: 1.9 Harvey hours @ $400/hour = $760; 2.3 Hubbard hours @ $255/hour = $586.50; and 0.7 Zibart hours @ $200/hour = $140.

[15]Furthermore, on September 15, 2011 – when Joyce Moore finally appeared for deposition as The SJM Trust representative – Joyce Moore testified that The SJM Trust had *never* in fact received any income on Sam Moore's behalf. She asserted that any such income had, instead, been deposited in their personal checking accounts but acknowledged that she and her husband had refused to produce their financial records in full because of their purported "absolute right of privacy" in those records and the lack of "a proper hearing"on the issue.

damages, what that calculation might incorporate, or how it would be itemized.[16]

Among other forms of relief, the defendants requested that the court impose one or more of the following sanctions: (1) preclude the plaintiffs from presenting any evidence regarding damages or, alternatively, draw an adverse inference that the plaintiffs had never received income for, or related to, any purported trademarks, rights of publicity, or other rights asserted in the lawsuit; (2) preclude the plaintiffs from relying on documents not produced; (3) preclude the plaintiffs from relying on ESI; and/or (4) award reasonable attorney's fees to the defendants for bringing the motion.

In the 2/2/12 MJ Order, the Magistrate Judge found as follows:

> Plaintiffs have been repeatedly warned of the consequences for missing deadlines and failure to produce documents. Plaintiffs failed to comply with the August 31, 2011 deadline in the Magistrate Judge's previous Order (Docket Entry 247) and informed Defendants they had done their "best" but intended to reserve their right to rely on documents discovered after the deadline. Ms. Moore informed Defendants at her deposition that she had not searched all her files, more than two years into the litigation. Plaintiffs have repeatedly failed to produce ESI. Plaintiffs have also failed to produce their tax returns to Defendants, as ordered by the Magistrate Judge. For these reasons, the Magistrate Judge believes that the penalties above are appropriate and necessary.

(*Id.* at pp. 3-4.) As a sanction for this conduct, he recommended that (1) the defendants "are entitled to an adverse inference with regard to Plaintiffs' claim that they received income from the intellectual property asserted in the lawsuit" (reflecting the lesser of the two sanctions

---

[16]The defendants also identified various other discovery abuses. For instance, in their Rule 26 disclosures, the plaintiffs had purported to identify an unspecified agent at "Buddy Lee Attractions" as possessing relevant information. After the court ordered the plaintiffs to provide contact information for each witness – which the plaintiffs had improperly refused to provide – the plaintiffs identified Buddy Lee himself as the relevant agent at Buddy Lee Attractions. However, Buddy Lee had actually been dead for nearly 10 years. As the defendants pointed out, this reflected "just another example of the casual disregard Plaintiffs have for the Court's Order[s]." (Docket No. 260 at p. 6.)

requested by the defendants); and (2) the plaintiffs be precluded from relying on any records not yet produced.  (*Id.*)  However, he did not grant the defendants' additional request for attorney's fees.

The plaintiffs did not object to the second recommendation (relating to reliance on certain records), which the court will therefore adopt without further analysis.  However, the plaintiffs initially moved for "clarification" of the adverse inference recommendation, arguing that it was "overbroad" because (1) Sam Moore and Joyce Moore never possessed responsive tax records to produce in the first place; and/or (2) an adverse inference regarding "intellectual property" would encompass Sam Moore's publicity rights, which plaintiffs contended had "absolutely no nexus" to the failure to produce tax returns.  (*Id.* at p. 8.)  The Magistrate Judge denied the motion, finding that his recommendation was clear.  (Docket No. 330.)

### B.      Challenges to the Rule 37(b)(2)(C) Sanctions in the Motion for Review

In the Motion for Review, the plaintiffs argue that the Magistrate Judge committed clear error by refusing to reconsider and/or clarify his previous decision.  The plaintiffs essentially reiterate on review the arguments that they made in their Motion for Reconsideration.

The court finds the plaintiffs' arguments to be without merit.  The record – which this court has reviewed in detail – indicates that the plaintiffs essentially played a game of "hide the ball" with respect to their licensing efforts, enforcement efforts, and alleged damages.  They provided evasive discovery responses, refused to produce responsive records or to declare that none existed, appear to have made affirmative misrepresentations in the Complaint/First Amended Complaint and in discovery about the The SJM Trust, and have engaged in

16

unreasonable word-smithing of the Magistrate Judge's Orders,[17] apparently in an effort to avoid producing otherwise responsive records or to avoid stating that none existed in the first place. Furthermore, at deposition, Joyce Moore testified that personal accounts reflecting income from Sam Moore's appearances – at which he claims he held himself out as the "Soul Man" or some variation thereof – were incomplete, asserting baseless justifications for refusing to produce those records. These practices are unacceptable and merited sanctions.

As to the argument that the sanction related to "intellectual property" is overbroad, the court disagrees. First, in their Response to the Motion for Sanctions below, the plaintiffs did not argue that the sanctions suggested by the defendants, if imposed, should be limited to "trademark" licensing income. Therefore, the plaintiffs did not properly preserve this argument for review. Second, even addressing the merits of the plaintiffs' argument, the court finds no indication of clear error. The plaintiffs essentially complain that the recommended adverse inference "could be understood to mean Sam Moore's income from performances and/or his publicity rights." (Docket No. 348 at p. 6.) The court interprets the Magistrate Judge's order *precisely* to have that scope: the sanction encompassing "intellectual property"reflects one of the (lesser) sanctions requested by the defendants in their Motion for Sanctions, which the Magistrate Judge considered and granted.[18] The plaintiffs engaged in vexatious and dilatory

---

[17]For example, following the Magistrate Judge 8/3/11 Order, the plaintiffs moved for clarification of that Order. In an August 25, 2011 Order concerning the plaintiffs' motion, the Magistrate Judge expressed frustration with the plaintiffs, stating that, "[w]ith all due respect, the Plaintiffs continue to tilt at the windmill rather than move forward with their case." (Docket No. 250 at p. 2.)

[18]As defendants point out, the Magistrate Judge could have imposed one of the more severe sanctions requested by the defendants, but did not do so.

discovery tactics with respect to their licensing efforts, enforcement efforts, and damages claims, including disobeying court orders, for which plaintiffs must suffer adverse consequences. Furthermore, the plaintiffs myopically focus on their failure to produce tax returns, even though it is apparent that the Magistrate Judge sanctioned the plaintiffs for their continued failure to obey a host of discovery obligations and court orders (including the CMO), not just their failure to file tax returns specifically. At any rate, the fact that the plaintiffs would simply prefer a more narrowly tailored sanction – apparently one with no "teeth" – provides no basis for overturning the Magistrate Judge's reasoned judgment.

Thus, the court finds no clear error in the Magistrate Judge's recommendation of an adverse inference that is broader than the self-serving language the plaintiffs would prefer. However, to ensure that the record is clear, the court will modify the adverse inference to the form originally requested by the defendants in their Motion for Sanctions, which reads as follows: "The plaintiffs have never received income for or related to any purported trademarks, rights of publicity, or other rights asserted in this lawsuit."

### III.    Motion to Amend

The plaintiffs filed a Motion to Amend on November 22, 2011, nearly one year after the CMO deadline to do so, nearly two months after the close of fact discovery, and just seven weeks before dispositive motions were due. In the Motion to Amend, the plaintiffs sought leave to do the following: (1) dismiss The SJM Trust as a party by removing it from the First Complaint;[19] (2) "clarify" that their Lanham Act and state law publicity claims have an

---

[19]Apparently, the plaintiffs sought to "dismiss" The SJM Trust by removing their name from the case caption and from the text of the First Amended Complaint, which would have been procedurally improper. Although the plaintiffs have essentially conceded, in the Motion to

international scope; and (3) add a new copyright claim concerning an *ad lib* catch phrase that Sam Moore allegedly coined in 1966, which Samuel L. Jackson's character utilized in *Soul Man* when performing "Hold On, I'm Comin'" during a scene early in the movie.

Because the plaintiffs would have required an amendment to the CMO to file the proposed Second Amended Complaint, under Fed. R. Civ. P. 16(b)(4) they were required to demonstrate "good cause" to amend the CMO on the eve of summary judgment. After considering the plaintiffs' arguments, the Magistrate Judge found that the plaintiffs had not shown good cause for requesting amendments to the Lanham Act and state law publicity claims at this late stage, rather than much earlier in this lawsuit's proceedings (if not at its outset). With respect to the proposed copyright claim, the Magistrate Judge found that the plaintiffs had not shown good cause for proposing the amendment much earlier in the case, that adding the claim would be highly prejudicial to the defendants, and that adding the claim would require re-opening discovery.

In their Motion for Review, the plaintiffs challenge the Magistrate Judge's rulings as to the Lanham Act, state law publicity, and proposed copyright claims. As to the proposed amendments concerning the Lanham Act and state law publicity claims, the plaintiffs in their Motion for Review have not identified any aspect of the record that rebuts the Magistrate Judge's finding that the amendments should have been made, if at all, much earlier.

As to the new copyright claim, the plaintiffs similarly could have raised the claim much

---

Amend and elsewhere, that The SJM Trust has no claims to assert in this lawsuit, they have not yet filed a Motion for Voluntary Dismissal pursuant to Fed. R. Civ. P. 41. At any rate, in the 2/3/12 MJ Order, the Magistrate Judge noted that both parties appeared to agree that The SJM Trust should be dismissed.

earlier in the litigation, but chose to wait until after the close of discovery to request leave to do so.[20] As the Magistrate Judge properly found, the plaintiffs did not demonstrate that any of the referenced deposition testimony and other evidence was necessary for Sam Moore to understand that a copyright claim might exist.  The Magistrate Judge did not, as the plaintiffs contend, "impose a huge and unfair legal standard on a layman" by holding that Sam Moore should have ascertained, at some point before the close of discovery, that he may have had some form of intellectual property interest in the catch phrase.  (Docket No. 348 at p. 8.)  The denial of the Motion to Amend was justifiable on these bases alone.

Furthermore, the possibility of re-opening discovery to address the late-filed copyright claim and the potential need to add an indispensable party (*see* Docket No. 284 at p. 16) to the case with respect thereto are simply not acceptable at this stage.  It was not clear error for the Magistrate Judge to find that the substantial prejudice to the defendants and the potential need to re-open discovery also compelled denial of the request to add the unjustifiably untimely copyright claim.

In sum, as concerns the Motion to Amend, the plaintiffs simply re-argue points considered and appropriately addressed by the Magistrate Judge, without providing any basis for a finding of clear error.

## IV.  <u>Confidentiality Designations</u>

In the 2/3/12 MJ Order, the Magistrate Judge granted in part and denied in part the plaintiffs' renewed request to reclassify certain records marked as "Attorney Eyes Only" and to

---

[20]Furthermore, although the court need not reach the issue, the proposed copyright claim was likely futile anyway.  (*See* Docket No. 285 at pp. 15-17 (arguing, *inter alia*, that a copyright claim extends only to duplication of a sound recording itself).)

provide the plaintiffs with unredacted versions of these documents. The Magistrate Judge had

examined a banker's box of over 200 challenged records and made the following findings:

> (1)    The defendants' redactions were appropriate, because the plaintiffs and the defendants were competitors and the redacted materials constituted highly sensitive "trade secrets";
>
> (2)    With respect to documents designated as "Attorneys' Eyes Only":
>
>> (A)    Records relied upon by the defendants in their pending Motion for Summary Judgment would be immediately redesignated as "Confidential," thereby permitting the plaintiffs to view them in preparing their Response to the Motion for Summary Judgment.
>>
>> (B)    As to the remaining Attorneys' Eyes Only records – *i.e.*, those on which the defendants did not rely in their Motion for Summary Judgment – those documents would be redesignated as "Confidential" and provided to the plaintiffs only after the court's disposition of the Motion for Summary Judgment.

In the Motion for Review, the plaintiffs first argue that the 2/3/12 MJ Order was unclear

because it did not require the defendants to produce unredacted copies of the challenged

documents to plaintiffs. To the contrary, the order is quite clear that the trade secret redactions

were proper and that the documents would be furnished to the plaintiffs in redacted form – the

same form available to the plaintiffs' attorneys. The Magistrate Judge plainly did not commit

clear error by denying the plaintiffs' request for clarification on this issue.

The plaintiffs further argue that they were prejudiced by the redactions in preparing their

opposition to the Motion for Summary Judgment. However, the plaintiffs make this argument in

blanket fashion, without citation to any specific records, without citation to any legal authority,

and without any discussion of how the defendants' redactions of highly sensitive "trade secret"

information somehow prejudiced them. Furthermore, the plaintiffs do not contend that the

defendants, in their Motion for Summary Judgment, relied on the redacted information in any

fashion. Therefore, the court finds no basis to find that the Magistrate Judge's decision in this regard constituted clear error.

The plaintiffs also contend that it was clear error for the Magistrate Judge to preclude them from viewing additional Attorneys' Eyes Only materials (*i.e.*, those not utilized by the defendants in their Motion for Summary Judgment) until after the summary judgment stage. Again, the plaintiffs make this argument in blanket and conclusory fashion: they do not reference any particular records among the 200+ records at issue; nor do they explain specifically how they were prejudiced by the inability to view certain records personally.[21] Thus, the court finds that plaintiffs have not demonstrated that it was clear error for the Magistrate Judge to refuse to reconsider his earlier judgment, which reflected a document-by-document review and fair consideration of the parties' arguments with respect to those materials.

Finally, the plaintiffs contend that it was clear error for the Magistrate Judge to find that the plaintiffs and the defendants are "competitors," thereby entitling the defendants to assert trade secret objections in the first place. The court disagrees. The plaintiffs have repeatedly asserted that the defendants compete with them – indeed, they assert an *unfair competition claim* under the Lanham Act and, in Response to the pending Motion for Summary Judgment (Docket No. 340 at pp. 28-29), they have argued that "[t]he parties both offer the same type of goods and services . . . . Defendants' Movie and DVD *compete directly* with Plaintiffs' DVD and Defendants' Soundtrack competes directly with Plaintiffs' CD and musical performance services." Accordingly, it was plainly not clear error for the Magistrate Judge to find that the

---

[21]Of course, the plaintiffs' attorneys had access to the Attorneys' Eyes Only materials in preparing the Response to the Motion for Summary Judgment and could have incorporated those materials into the Response.

parties are competitors and, therefore, that the defendants are entitled to protect their trade secrets from the plaintiffs.

In sum, the plaintiffs have not demonstrated that the Magistrate Judge's reasoned consideration of the 200+ documents submitted for *in camera* review manifested clear error in any respect.

## CONCLUSION

For the reasons stated herein, the plaintiffs' Motion for Review will be granted in part and denied in part. The plaintiffs will be ordered to pay to the defendants $16,021.00 in reasonable attorney's fees. The court will modify the recommended adverse inference as expressed herein and will otherwise accept the Magistrate Judge's recommendations. The remainder of the relief requested in the Motion for Review will be denied.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge