| | | |
|---|---|---|
| **SAMUEL DAVID MOORE, JOYCE ELLEN** | ) | |
| **MOORE, and THE SJM TRUST,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 3:09-CV-00166** |
| **v.** | ) | |
| | ) | **Judge Aleta A. Trauger** |
| **THE WEINSTEIN COMPANY, LLC, doing** | ) | **Magistrate Judge Brown** |
| **business as DIMENSION FILMS; METRO-** | ) | |
| **GOLDWYN-MAYER STUDIOS, INC.;** | ) | |
| **GENIUS PRODUCTS, LLC; and CONCORD** | ) | |
| **MUSIC GROUP, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

On May 11, 2012, the court granted summary judgment to the defendants. After the

Clerk taxed costs against the plaintiffs in the amount of $62,697.45 (Docket No. 383), the

plaintiffs filed Objections to the taxation of costs (Docket No. 387), to which the defendants

filed a Response in opposition (Docket No. 391), and the plaintiffs filed a Reply (Docket No.

393). On July 9, 2012, the court referred a ruling on the plaintiffs' specific objections to the

Magistrate Judge. (Docket No. 386.) On December 18, 2012, after considering the parties'

submissions, the Magistrate Judge found that the defendants' costs are properly taxed at

$52,728.67. (Docket No. 402.) The plaintiffs have filed Objections to the Magistrate Judge's

ruling (Docket No. 403), to which the defendants have filed a Response in opposition (Docket

No. 406). For the reasons explained herein, the court construes the Magistrate Judge's ruling as

a Report & Recommendation ("R&R"). The court will adopt the R&R in part and reject it in

part, and the court will tax $18,396.18 in costs against the plaintiffs and in favor of the

defendants.

## LEGAL STANDARD

A magistrate judge's rulings on the taxation of post-judgment costs must be treated as a report and recommendation subject to *de novo* review.[1]  The court therefore construes the Magistrate Judge's Order as a Report and Recommendation subject to *de novo* review under Fed. R. Civ. P. 72(b).[2]

Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party but allows the denial of costs at the discretion of the trial court.  *Knology, Inc. v. Insight Commc'ns. Co., L.P.*, 460 F.3d 722, 726 (6th Cir. 2006); *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986) ("Before the district court, it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party.") (internal quotation omitted).  A denial of costs may be appropriate where taxable expenditures by the prevailing party are unnecessary or unreasonably large, where the prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues, when the prevailing party's recovery is so insignificant that the

---

[1]*See McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) ("A Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issue. . . . The district court must then conduct a de novo review of the findings and issue an order as it sees fit.  The court cannot simply 'concur' in the Magistrate Judge's findings."); *Massey v. City of Ferndale*, 7 F.3d 506, 509-10 (6th Cir. 1993); *AAA Venetian Blind Sales v. Beaulieu of Am., Inc.*, 124 F.3d 196 (6th Cir. Aug. 19, 1997) (unpublished table opinion).

[2]Because a post-judgment Rule 54(d)(1) motion for taxation of costs is by definition not a "pretrial matter not dispositive of claim," Rule 72(a) does not apply.  The Sixth Circuit accordingly treats post-judgment motions for costs as "dispositive of a claim" and, therefore, subject to Rule 72(b).  *Massey*, 7 F.3d at 510.

judgment amounts to a victory for the defendant, or where a case is "close and difficult." *White & White*, 786 F.2d at 730. The party objecting to the clerk's taxation generally has the burden of persuading the court that it was improper. *BDT Prods., Inc. v. Lexmark Int'l., Inc.*, 405 F.3d 415, 420 (6th Cir. 2005) (abrogated on other grounds) (quoting 1- C. Wright, A. Miller, and M. Kane, Fed. Prac. & Proc Civil 3d § 2679 (1998)); *White & White*, 786 F. 2d at 730. The capacity of an indigent litigant to pay costs and the losing party's good faith are also factors that the court may weigh. *See Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989); *Knology,* 460 F.3d at 728.

Here, the plaintiffs contend that the Magistrate Judge should have denied fees entirely or reduced them even further, because (1) the case was sufficiently "close" or "difficult" to merit denying an award of costs entirely, (2) certain additional litigation expenses (particularly costs associated with electronic discovery) are non-taxable or should otherwise be excluded, and (3) the plaintiffs are financially unable to pay the costs taxed.[3]

## ANALYSIS

## I.  Whether Fees Should Be Denied Entirely

The plaintiffs argue that this case was sufficiently "close" to justify denying *all* costs. In support of this proposition, they cite only to *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 732 (6th Cir. 1986) (hereinafter, "*White II*").

In the underlying lawsuit at issue in *White II*, the plaintiff brought an antitrust action against the defendant, leading to an 80-day bench trial involving 43 witnesses, 800 exhibits, 15,000 pages of trial transcript, and a 95-page opinion stating the district court's findings of fact and conclusions of law. *See White II*, 786 F. 2d at 732 (citing trial court judgment at 540 F.

---

[3]The court addresses these issues in a different order than the plaintiffs presented them.

Supp. 951-1046 (W.D .Mich. 1982)).  On appeal from the district court's initial entry of judgment in favor of the plaintiff, the Sixth Circuit considered the "prodigious compilation" of legal and factual materials in the case, reversed certain of the district's factual and legal findings, and remanded the case for entry of judgment in favor of the defendant.  *See White & White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495 (6th Cir. 1983) ("*White I*").  On remand following *White I*, the district court entered judgment for the defendant but refused to award costs to the defendant under Rule 54(d)(1).  *See White II*, 786 F.2d at 729-730 (discussing trial court ruling).  The defendant appealed the denial of costs.

In *White II*, the Sixth Circuit affirmed the district court's refusal to award costs, noting that "the case involved complex issues requiring protracted litigation," leading to a lengthy trial and the district court's 95-page opinion.  The Sixth Circuit stated that "[t]he closeness of a case is not judged by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case."  In light of the remarkably complicated proceedings below, the Sixth Circuit found that the district court had "acted properly in considering the length and difficulty of the case as a factor in denying costs to [the defendant]."  *Id.*

Drawing on the factors that influenced the *White II* court, many courts apply *White II* to cases in which "difficult" or "close" factual or technical issues were tried to a jury, or where a particularly difficult legal or constitutional question was presented.  *See, e.g., McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 743 (6th Cir. 2002) (noting that "[a] case be characterized as difficult based on the length of the trial, the number of witnesses, and the amount of evidence submitted to the jury," and finding that the trial court did not err in denying

4

costs following a 23-day trial with 40 witnesses involving "difficult" causation issues); *Spurlock v. Metro Gov't of Nashville*, 2013 WL 6237723, at *1-*2 (M.D. Tenn. Dec. 3, 2013) (refusing to award costs to prevailing defendant, where case involved "protracted" litigation, a seven-day preliminary injunction hearing, an eleven-day trial involving "[m]any witnesses," and an 80-page opinion setting forth the district court's findings of fact and conclusions of law on a difficult constitutional question).

This case is not akin to *White II* or other cases in which courts have denied costs entirely. The case certainly took a substantial amount of time to litigate and involved voluminous factual and legal submissions. However, as the defendants correctly point out, the plaintiffs brought a litany of claims, all of which were found to be insufficient to survive either the Rule 12 or Rule 56 standards. The court dismissed two defendants from the case at the Rule 12 stage based on a lack of personal jurisdiction (Docket No. 112 at pp. 7-14), and the court permitted some of the remaining claims to proceed by a thread.[4]  As discovery later revealed, the plaintiffs also falsely claimed (apparently to establish Tennessee as a proper forum) that plaintiff The SJM Trust was a Tennessee trust (it was not) and that it owned the purported common law trademarks and

---

[4] *See* Docket No. 112. at pp. 21 ("It appears unlikely, and, perhaps, 'facially implausible,' that the defendants' use of the term 'Soul Men' is not artistically relevant or that it explicitly misleads the consumer as to the source of the mark.  It appears from the Complaint and related materials that there is no allegation that any of the material makes explicit reference to Mr. Moore and, therefore, satisfying the high bar set by *Rogers* would be very difficult."), and 21 n. 9 ("Based upon the court's reading, the plaintiffs' Count III claim against Concord is likely foreclosed by *ETW*, which indicates that use of a mark in promoting or enhancing an expressive work is protected by the First Amendment.  Moreover, it does not appear, based upon the record to this point, that Concord would be subject to a 'competing titles' argument.")

publicity rights at issue in this lawsuit (it did not).[5]  Furthermore, as detailed in the court's

opinion granting summary judgment to the remaining defendants, (1) the plaintiffs failed to

establish that two of the three plaintiffs (Joyce Moore and The SJM Trust) had any cognizable

interests to assert in the first place (*see* Docket No. 375 at pp. 53-54), and (2) summary judgment

was warranted on Sam Moore's remaining polyglot of federal and state law claims, often on

multiple independent grounds, and in some instances without any meaningful attempt by Sam

Moore to address the defendants' asserted grounds for dismissal.[6]  The Sixth Circuit affirmed

this court's summary judgment order.  *See Moore v. Weinstein Co., LLC.*, 545 F. App'x 405 (6th

Cir. 2013).

As Magistrate Judge Brown recounted in a previous opinion, during the course of this

litigation, the plaintiffs presented shifting theories of liability, and the case seemed like a

"lawsuit in search of a theory."  (Docket No. 247 at p. 19.)  The plaintiffs were also sanctioned

for various discovery abuses, including "vexatious and dilatory discovery tactics with respect to

---

[5]The defendants' deposition of the SJM Trust conclusively demonstrated that The SJM
Trust had no viable claims.  Following that deposition, the plaintiffs agreed to dismiss The SJM
Trust and were directed by the Magistrate Judge to file a stipulation of dismissal under Rule
41(b).  The plaintiffs failed to do so, requiring the defendants to address claims by The SJM
Trust in their opening Rule 56 brief, to which the plaintiffs did not respond as it related to the
The SJM Trust.  (*See* Docket No. 375 at pp. 53-54.)

[6]For example, the court held that Sam Moore's various Lanham Act claims failed for
multiple reasons: the First Amendment plainly barred his § 43(a) claim relative to the purported
trademark rights; he failed to present any evidence justifying (and indeed had implicitly
abandoned) his competing titles claim against one defendant; he had no cognizable interest to
assert a competing titles claim as to the other defendants; there was no "likelihood of confusion"
relative to the claims against those defendants, in any case; and he could not maintain his federal
dilution claim because he failed to present evidence from which a reasonable factfinder could
find the requisite degree of "famousness."  (*See* Docket No. 375 at pp. 63-87.)

their licensing efforts, enforcement efforts, and damages claims, including disobeying court orders . . . ." (Docket No. 373 at pp. 17-18.)

Taken in context, the fact that this case has a cluttered docket, involved a substantial volume of factual and legal materials, and required a lengthy summary judgment opinion from this court does not favor denying the taxation of costs against the plaintiffs. The plaintiffs played a significant role in protracting this litigation, they pressed several meritless claims long past the point that they should have been abandoned, and they also failed to adduce sufficient evidence to survive summary judgment on any of their myriad of federal and state law claims. Furthermore, they have not shown that this case involved a novel or "difficult" issue of law that would justify denying or reducing fees. Having considered the plaintiffs' arguments *de novo*, the court finds that this was not a "difficult" or "close" case that warrants denying an award of costs.

## II.     Reasonableness of Particular Costs

### A.     Costs Not Associated with Electronic Discovery

The court agrees with the Magistrate Judge that the defendants are entitled to reimbursement for their attempts to serve Roger Friedman.[7] The court therefore adopts the Magistrate Judge's recommendation that the court award the defendants $545 for service of subpoenas.

The plaintiffs also challenge the fees associated with the expedited deposition transcripts of two witnesses, Joyce Moore and Collin Stanback. In the Declaration of Heather Hubbard (counsel for the defendants) (Docket No. 401, Hubbard Aff. ¶ 10), Ms. Hubbard explains that the

---

[7]The Magistrate Judge found that the defendants' costs for serving subpoenas should be reduced across the board. The defendants do not challenge that finding.

defendants expedited the transcripts of Joyce Moore's depositions (taken both in her personal capacity and as a Rule 30(b)(6) representative for The SJM Trust) for use in its Motion for Sanctions (Docket No. 259). That explanation, standing alone, is insufficient to justify why the transcripts had to be expedited, rather than waiting for a copy of the transcript to arrive in due course. The record indicates that the reporter for the depositions of Joyce Moore charged 50% more per page for expedited copies. (*See* Hubbard Aff. ¶ 10.) According to the Bill of Costs (Docket No. 382 at p. 4), the defendants demand $3,534.00 for the two expedited transcripts, which the court will reduce by one-third ($1,178) to approximate the extra cost for expediting those transcripts. As to the Stanback transcript, the plaintiffs' delay in paying the necessary fees created a need for the defendants to expedite that transcript, and the plaintiffs have not presented competent evidence justifying why the court should excuse their delay.[8] The court therefore will tax $11,699.44 in deposition-related costs in favor of the defendants.

As to photocopying charges, the Magistrate Judge reduced the rate per page from $0.20 to $0.15 per page. On review to this court, the plaintiffs have offered no legal authority that $0.15 per page is unreasonable, whereas the defendants have identified caselaw showing that a court may award up to $0.25 per page. *See, e.g.*, *Sykes v. Anderson*, 2008 WL 4776838, at * (E.D. Mich. Oct. 31, 2008).[9] The court finds that the $0.15 per page rate is reasonable. As to the

_____

[8]The plaintiffs raised other objections to the Magistrate Judge concerning the deposition-related charges. However, the plaintiffs have not challenged the Magistrate Judge's rulings on those other challenges. Ultimately, in light of the court's other findings herein, the deposition-related charges (the bulk of which the plaintiffs have not challenged in their Objections to the R&R) will now comprise approximately 2/3 of the costs that the court will tax against the plaintiffs.

[9]The defendants do not challenge the Magistrate Judge's reduction of the allowable cost per page to $.15 page.

number of copies, the Magistrate Judge observed that discovery in this case was protracted "at the fault of both sides," but found that no reduction in the number of necessary copies was warranted. Given the Magistrate Judge's observation that both sides played a part in prolonging discovery, some reduction is warranted. Based on the court's familiarity with the extensive record in this case, the court finds that a further 10% reduction is warranted to account for discovery issues attributable to the defendants, which presumably generated additional copying costs.[10] Therefore, the court will reduce by 10% the Magistrate Judge's recommendation of $3,109.33 in photocopying costs, resulting in an award of $2,798.40 in photocopying costs.

### B. Costs Associated with Electronic Discovery

#### 1. Statutory Construction

Rule 54(d)(1) authorizes district courts to award fees to a prevailing party, and 28 U.S.C. § 1920 defines the costs that a court may tax as a "cost" under the discretionary authority set forth in Rule 54(d). *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 441-42 (1987). Importantly, § 1920 "embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party." *Crawford*, 482 U.S. at 440. Thus, "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witnesses as costs, federal courts are bound by the limitations set out" in § 1920. *Id. see also W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86 (1991) (stating that § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express

---

[10]As the court's limited reduction indicates, to the extent both sides played some part in prolonging this case, the court views the plaintiffs as more at fault than the defendants. As detailed in previous opinions issued by the court, the plaintiffs obstructed discovery and disobeyed court orders as the litigation progressed.

statutory authority").  Furthermore, as a general matter, taxable costs under § 1920 are "modest in scope" and are "limited to relatively minor, incidental expenses."  *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).

In relevant part, § 1920(4) provides that the court may tax "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  Here, the defendants seek reimbursement for e-discovery costs associated with a number of functions performed both "in-house" and by an outside vendor.  The plaintiffs agree that some e-discovery-related costs are taxable under § 1920(4), but they argue that e-discovery costs related to de-duplication, running search terms, and data processing are not recoverable under the current version of § 1920(4).[11]  The plaintiffs also contend that, even if some costs demanded by the defendants could be recoverable, the defendants have failed to delineate which bills relate to taxable costs and which do not.

The court is essentially presented with two questions.  First, as a matter of statutory construction, what are fees for "exemplification" or "the costs of making copies" as they relate to electronic discovery expenses?  Second, based on the court's construction of the statute, do some of the expenses demanded by the defendants fall outside the scope of § 1920?

In particular, the first of these two questions presents a nuanced issue of statutory construction that has vexed the federal courts.  Electronic discovery often requires the services of specialized technicians to harvest, categorize, process, and produce electronic data in a readable

---

[11]The plaintiffs concede that the costs of scanning the conversion of documents using an Optical Character Recognition ("OCR") program may, if reasonable and necessary, be recoverable.  *See Frye v. Baptist Mem'l Hosp.*, 683 F. Supp. 2d 701, 710 (W.D. Tenn. Mar. 26, 2012).

format (or, conversely, to process incoming electronic productions from an opposing side).  As to what steps in the electronic discovery process constitute "making copies," the language of the statute is frustratingly vague.[12]

As a baseline matter, all courts, including the Sixth Circuit, appear to agree that costs for "electronic scanning" and "imaging of documents" constitute taxable costs under § 1920(4)  – that is, costs to convert electronic files to readable but non-editable formats.  *See BDT Prods, Inc. v. Lexmark Int'l., Inc.*, 405 F.3d 415, 420 (6th Cir. 2005), *abrogated on other grounds in Taniguchi*, 132 S. Ct. 1997; *Race Tires Am, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012); *Country Vintner of N. Car., LLC E.&.J. Gallo Winery, Inc.*, 718 F.3d 249, 260 (4th Cir. 2013); *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1329-30 (Fed. Cir. 2013); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009).  However, courts disagree about whether other types of costs associated with e-discovery are recoverable and, if so, under what circumstances.  The Sixth Circuit has yet to address this issue.

---

[12]In *Country Vintner* and *Race Tires*, the Third and Fourth Circuits outlined the history of § 1920(4).  *See Country Vintner of N. Car., LLC E.&.J. Gallo Winery, Inc.*, 718 F.3d 249, 254-47 (4th Cir. 2013); *Race Tires*, *Race Tires Am, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 164, 165 (3d Cir. 2012).  Briefly, before 1853, federal courts awarded costs in the same manner as the forum state in which they sat, leading to a diversity of approaches, including some that saddled litigants with "exorbitant fees for the victor's attorney."  *Race Tires*, 674 F.3d at 164 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 255 (1975)).  In 1853, Congress standardized and circumscribed the allowable costs, which it defined to include "lawful fees for exemplification and *copies of papers* necessarily obtained for use at trial."  *Race Tires*, 674 F.3d at 165 (emphasis added).  In 1948, Congress amended the Judicial Code to cover fees "for use in the case" (*i.e.*, a definition broader than "for use at trial").  *Id.*  Before 2008, the § 1920(4) continued to apply only to "copies of papers."  *Id.* However, in 2008, adopting in part a recommendation from the Judicial Conference Committee on Court Administration and Case Management, Congress changed the statute to refer to "the costs of making copies of *any materials*," an expanded definition meant to encompass electronic "copies"of documents.  *Id.* (emphasis added).

The prevailing view, adopted by the Third and Fourth Circuits, is that § 1920(4) has an exceedingly narrow scope as it relates to electronic productions. *See* 7 James Wm. Moore et al., Moore's Fed. Prac. ¶ 37A.36[5] (3d ed. 2014). As explained in *Race Tires*, "exemplification" likely refers either to (a) fees for presenting "illustrative" exhibits and demonstrative aids, or (b) authentication of an official transcript of a public record for use as evidence – neither of which applies here. *See* 674 F.3d at 166 (discussing competing definitions of "exemplification").[13] As to the "costs of making copies," the Third and Fourth Circuits have explained that the tasks (and associated costs) of electronic discovery other than file conversion – including "preserving, processing, searching, culling, and extracting ESI – do not amount to 'making copies'." *Race Tires*, 674 F.3d at 169-70. Thus, as those courts have construed § 1920(4), it does not cover "collecting and preserving" electronically stored information ("ESI"), "processing and indexing ESI," "keyword searching of ESI for responsive and privileged documents," or de-deduplication, among other tasks. *See Race Tires*, 674 F.3d at 167-170.

Some district courts have concluded that § 1920(4) has a much broader scope and should

---

[13]Remarkably, there does not appear to be an accepted definition of the term "exemplification." In *Kohus v. Toys R Us, Inc.*, 282 F.2d 1355 (Fed. Cir. 2002), the Federal Circuit, attempting to predict how the Sixth Circuit would rule, defined "exemplification" by its "legal" definition as set forth in Black's Law Dictionary, which defines it as "an official transcript of a public record, authenticated as a true copy for use as evidence." By contrast, the Seventh Circuit has construed "exemplification" more broadly to mean "the act of illustration by example," which would include the costs of presenting exhibits and demonstrative aids. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). At any rate, certain other courts (and the parties here) have used "exemplification" as essentially synonymous with copying. As the Fourth Circuit has observed, under the canon of construction that "the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words," it is inappropriate to elide the terms "exemplification" and "making copies." *Race Tires*, 674 F.3d at 165-66. Indeed, in both *Race Tires* and *Country Vintners*, the courts' analyses focused on the meaning of the term "making copies" as the most "relevant statutory language." *See Country Vintner*, 718 F.3d at 258.

cover functions beyond the actual act of scanning and converting electronic files. These courts typically observe that the services performed by e-discovery specialists are often "indispensable" and "unavoidable," and that use of e-discovery consultants often results in cost savings and efficiency. *See, e.g.*, *Chenault v. Dorel Indus.*, 2010 WL 3064007, at *4 (W.D. Tex. Aug. 2, 2010). As explained by the Third Circuit in *Race Tires*, while those arguments may provide a persuasive policy rationale for a change in the law of post-judgment "cost" awards, the policy arguments are not grounded in the language of § 1920, which strictly constrains the types of costs that may be taxed:

> The decisions that allow taxation of all, or essentially all, electronic discovery consultant charges, such as the District Court's ruling in this case, are untethered from the statutory mooring. Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of making copies.

*Race Tires*, 674 F.3d at 169. Adopting the reasoning of *Race Tires*, the Fourth Circuit agrees that § 1920(4) "limits taxable costs to . . . converting electronic files to non-editable formats, and burning the files onto discs." *Id.* at 260.[14]

Here, the plaintiffs specifically challenge the costs for de-duplication, running search terms, and data processing. This court agrees with the prevailing view that these expenses are not taxable as costs under § 1920(4), a view that other district courts within the Sixth Circuit

---

[14]The Federal Circuit, applying Eleventh Circuit precedent, generally agreed with *Race Tires* and *Country Vintner*, except that the Federal Circuit would include imaging a source drive and extracting requested data, where the requested data are included in the underlying discovery request. *See CBT Flint Partners*, 737 F.3d at 1333. This court finds the Third and Fourth Circuit's approach to be more consistent with the statutory language.

have also adopted following *Race Tires* and *Country Vintner*. *See Thompson , I.G., L.L.C. v. Edgetech, I.G., Inc.*, 2014 WL 764629, at *2-*3 (E.D. Mich. Feb. 25, 2014); *El Camino Resources, Ltd. v. Huntington National Bank*, 2012 WL 4808741, at *6-*7 (W.D. Mich. May 3, 2012) (report and recommendation), *adopted* 2012 WL 4808736 (W.D. Mich. Oct. 10, 2012).

### 3. Effect of the Administrative Order

Here, the Case Management Order governing this case provides that, "[g]enerally, the costs of e-discovery shall be borne by each producing party. However, the Court may apportion the costs of e-discovery upon a showing of good cause." (Docket No. 142.) This language is simply a modified version of language from Administrative Order 174, which embodies the standard terms governing e-discovery in the Middle District of Tennessee. Although the plaintiffs argue that the CMO precludes an award of costs under Rule 54(d) and 28 U.S.C. § 1920, that is not a proper reading of the CMO. The CMO governs the apportionment of litigation expenses in the first instance during the course of litigation – essentially reinforcing the "American Rule" with respect to electronic discovery. However, it does not purport to preclude the application of the federal rules and federal statutes governing the post-judgment apportionment of "costs to a prevailing party in the lawsuit, whether under Rule 54(d)(1) and § 1920 or otherwise. Moreover, as the defendants point out, awarding recoverable and reasonable "costs" (as narrowly defined in § 1920) to a prevailing party at least constitutes "good cause" for the post-judgment cost-shifting, given that the taxation of costs is authorized by the federal rules and by statute.

### 4. Application

The defendants seek the reimbursement of expenses charged by (1) their counsel's in-

house electronic discovery team, which the court will refer as "Technology Services," and (2) expenses charged by the defendant's outside document vendor, Document Solutions, Inc. ("DSI"). Technology Services billed the defendants $150 per hour for 144.5 hours of work. The Magistrate Judge disallowed 9.6 hours of time charged by Technology Services and reduced the per hour charge to $100 to reflect a more "reasonable" rate. After both downward adjustments, the Magistrate Judge recommends an award of $13,490 in taxable costs attributable to Technology Services invoices. The defendants also submitted invoices from DSI totaling $22,706.90, which included (among other things) specialist time at a rate of $175 per hour. The Magistrate Judge found that no adjustments to the DSI-related charges were warranted.

With respect to DSI, the plaintiffs contend that the defendants have not adequately described the work performed, that the rate of $175 is unreasonable, and that the bills include non-taxable expenses. With respect to Technology Services, the plaintiffs argue that the adjusted $100 rate is still unreasonable, that its bills similarly do not provide sufficient detail to qualify any expenses as taxable, and that tasks performed include non-taxable functions.

With respect the outside document vendor, DSI, the vast majority of electronic discovery-related expenses demanded by the defendants appear to be non-taxable, or there is insufficient evidence to show that they are taxable. First, several entries by the vendor are plainly non-taxable, including: (1) a 6/14/11 entry for 85.4 hours at a rate of $150/hour (*i.e.*, $12,810.00) to "search for responsive docs for Baldi, Burk, Lui, McEwen, Smith"; (2) a 6/14/11 entry of $230.00 for "deduplification of date filter"; and (3) a 9/19/11 entry for $131.25 in "project consultation" fees. Second, as to the remaining entries, many are vague about the nature of the task performed, stating only that they relate to "data production" or "native processing."

On the other hand, the defendants have submitted an affidavit from Jeff Stoneking, a Litigation Support Consultant for Document Solutions, which explains more broadly why some of these expenses were necessary to make copies of electronic records. (Docket No. 389.) The remaining charges also include both the actual costs of producing CDs and other costs immediately incident to making copies, including technical time. In light of these facts, the court is persuaded that a fraction of the remaining expenses are taxable costs under § 1920, but the court finds that the inclusion of non-taxable tasks and the lack of clarity in the billing entries warrants a substantial across-the-board reduction. Without expressing an opinion as to whether the $175 rate should be reduced to $100 per hour as a general matter, the court will (after deducting the three aforementioned entries) reduce the remaining charges by 90%, which more than accounts for any potential unfairness in the rates charged or the taxability of the expenses. Accordingly, with respect to DSI's charges, the court will award only $953.57.

As to the defendants' in-house vendor charges, the plaintiffs argue, without citation to any authority, that the rate of $100 per hour is unreasonable. The court finds no fault with the Magistrate Judge's conclusion concerning that rate. However, the court agrees that it is difficult to discern which charges specifically relate to "making copies," such as scanning, imaging, or creating CDs for production. For example, many entries simply state "work on production," "preparation of documents for production," "preparation of documents for review," and the like. Also, a number of entries plainly do not constitute "making copies," including entries for "telephone calls . . . re: searching and review of new documents," and "meeting with H. Hubbard re: document review and searches," and "work on discovery budget." On the other hand, the Affidavit of Shandra Reece (Docket No. 388) explains that the entries for "work on production"

include some tasks necessary to making copies of electronic files, including a quality control check to conform with the parties' agreed-upon production parameters and the physical burning of a CD with an appropriate label. The court is persuaded that, in the aggregate, the defendants have shown that at least a small fraction of the work performed by Technology Services falls within the narrow definition of "making copies" under § 1920(4). However, as with the DSI invoices, the court finds that a substantial across- the-board reduction is warranted to the Technology Services charges to account for excluded tasks and vagueness in the billing entries. Of the $13,490 in Technology Services charges allowed by the Magistrate Judge,[15] the court will therefore disallow an additional 90%, resulting in $1,349.00 in taxable charges relative to Technology Services.

On a final note, the plaintiffs have conceded that charges for OCR scanning are taxable as a legal matter, although they dispute that the defendants have shown that the OCR scanning charges in this case were reasonable and necessary. According to the Reese Affidavit, the plaintiffs produced certain electronic records as unsearchable ".pdf" files, requiring scanning and OCR to make the documents searchable. The court finds that the scanning and OCR charges are reasonable, necessary to the litigation, and fully recoverable under § 1920(4). A company called "Pitney Bowes" performed this work, and the associated charges total (by the court's calculation) $1,053.77. (*See* Docket No. 387; *see also* Reece Aff. ¶ 8.)

In sum, the court finds the following costs taxable: (1) $545 for service of subpeonas; (2) $11,699.44 in deposition costs; (3) $2,798.40 in photocopying costs; and (4) $3,353.34 in

---

[15]The defendants do not challenge the rate reduction or the Magistrate Judge's ruling that 9.6 hours of time are not taxable.

electronic discovery-related costs ($950.57 relative to DS, $1,349.00 relative to Technology Services, and $1,053.77 relative to Pitney Bowes). The court therefore finds that $18,396.18 will be taxed against the plaintiffs and in favor of the defendants.

## III.    Unsupported Assertion of Inability to Pay

"[W]hen a party claims indigency, [the Sixth Circuit] requires a determination of his or her capacity to pay the costs assessed." *Sales*, 873 F.3d at 120 (concerning a *pro se* plaintiff's claim of inability to pay the costs taxed against him). The burden is on the plaintiff to show that, as a practical matter, he is incapable of paying the costs. *Jones v. Kolb*, 84 F. App'x 560, 561-62 (6th Cir. 2003) (citing *Weaver v. Toombs*, 948 F.2d 1004, 1008 (6th Cir. 1991)); *see also Tuggles v. Leroy-Somer, Inc.*, 328 F. Supp. 2d 840, 845 (W.D. Tenn. 2004).

Here, in submissions to the Magistrate Judge and to this court on review of the Magistrate Judge's R&R, counsel for the plaintiffs argues that an award of costs would be inequitable because of the "precariousness of Plaintiffs' finances." Counsel claims that this "precariousness" has forced Sam Moore to continue to work to support himself and his family, that he has had unspecified "disputes with the IRS," and that he is burdened by an unspecified "bankruptcy proceeding involving the Estate of Billy Preston." Plaintiffs' counsel contends that, if the Magistrate Judge had made an assessment of their finances, he would have concluded that the plaintiffs "simply cannot afford to pay $53,000 in costs."

Despite multiple opportunities, the plaintiffs have not submitted any factual materials supporting their invocation of indigency. After the plaintiffs filed their initial Objections to the taxation of costs, the defendants argued (correctly) that the plaintiffs had not presented any admissible evidence to support their contentions. (Docket No. 391.) In their Reply, the

plaintiffs stated that the defendants had "callously" claimed that the plaintiffs had not properly supported a claim of indigency, but the plaintiffs nevertheless failed to produce any supporting records. Specifically, the plaintiffs referenced, but did not file, unspecified "financial documents produced in discovery," including "IRS documentation regarding Plaintiffs' tax returns" that supposedly would support the plaintiffs' representations. After the plaintiffs filed the instant Motion for Review, the defendants again pointed out that the plaintiffs had not shown that paying costs would render them insolvent or otherwise constitute such a hardship that denying costs entirely would be warranted. The defendants pointed out (again correctly) that the plaintiffs "did not even attempt to provide Magistrate Judge Brown with any details of their financial situation or proof that they would become insolvent if required to pay costs." The plaintiffs again did not produce any evidence in response to the defendants' argument.

On January 21, 2014, nearly 18 months after filing its underlying Objections to the taxation of costs,[16] the plaintiffs filed a Statement of Plaintiffs as to Costs (Docket Nos. 415), in which they reiterated that they "persist in believing that awarding costs as proposed in the Magistrate's Report would be devastating." They state that, in the time since the Magistrate Judge issued the R&R, their financial situation "has deteriorated, particularly as the result of a

---

[16]The plaintiffs appealed the court's summary judgment order on June 20, 2012. (Docket No. 379.) The Sixth Circuit affirmed this court's order on October 31, 2013 (Docket No. 408), and the mandate issued on November 22, 2013 (Docket No. 409). In the interest of avoiding further litigation concerning the issue of appropriate costs to be taxed, the court ordered the parties to attempt to resolve the matter directly and to report on their efforts by December 17, 2013. (Docket No. 410.) On that date, the parties requested and received an extension to January 17, 2013 to continue their negotiations. (Docket Nos. 412 and 413.) Much to the court's chagrin, the parties filed competing Notices on January 17, 2014 (defendants) and January 21, 2014 (plaintiffs, late-filed with leave of court), stating that they had been unable to reach an agreement. (Docket Nos. 413, 415, and 417.)

long-standing dispute with the IRS concerning Tax Year 1999," which supposedly "resulted in an attachment of a significant portion of both their Social Security benefits and may have put other of their assets in jeopardy." The plaintiffs *again* present no evidence to support these vague and entirely unsupported assertions of financial hardship. They do offer to "submit further documentation under seal" to support the impact of an award of costs on the plaintiffs, if, in their words, the court "wishes" to explore the issue.[17]

The burden is on the plaintiffs to show that they cannot pay costs taxed against them. The plaintiffs filed their underlying Objections to the taxed costs on July 18, 2012. Despite numerous opportunities before the Magistrate Judge and before this court – a time period spanning *over two years* – the plaintiffs repeatedly have failed to present evidence to support their claim of inability to pay costs. With respect to their belated "offer" to present documentation to the court over 18 months after their initial motion, their failure to present this information in the first instance is, once again, inexplicable and inexcusable. It is not incumbent upon the court (nor was it incumbent upon the Magistrate Judge) to "take counsel's word for it." Moreover, unlike cases involving *pro se* plaintiffs proceeding *in forma pauperis*, the plaintiffs here are represented by sophisticated counsel, and the court has no grounds to presume that the plaintiffs are indigent or otherwise unable to pay costs. *See, e.g.*, *Sales*, 873 F.2d at 120 (remanding case to assess *pro se* prisoner's ability to pay costs) Thus, in the absence of supporting evidence, the court finds that the plaintiffs have not shown that they are incapable of paying an assessment of costs against them. *Compare, e.g.*, *Svendsen v. Wal-Mart Stores E..,*

---

[17]The use of the word "further" is misleading. The plaintiffs have not presented the Magistrate Judge or this court with evidence in the first place.

*LP*, 2014 WL 2645554, at *2 (M.D. Tenn. June 13, 2014) (finding indigency established, where plaintiff provided "detailed financial information" in two affidavits that enabled court to assess asserted indigency).

The court also notes that the plaintiffs' claims of inability to pay are inherently suspect and likely disingenuous. During the course of this litigation, the plaintiffs resisted producing financial information, and the plaintiffs failed to produce financial information to the Magistrate Judge. Furthermore, from the date that they filed their initial Complaint on February 27, 2009, the plaintiffs have litigated this case thoroughly and aggressively at every step. They fully briefed multiple dispositive motions and other substantial pre-trial motions,[18] filed voluminous,

---

[18] Among numerous detailed pre-judgment filings, the plaintiffs filed a 30-page brief in opposition to certain defendants' Motion to Dismiss (Docket No. 40), a 16-page Motion to Compel and a ten-page Reply with respect thereto (Docket Nos. 55 and 63), an eight-page Memorandum and associated Reply in support of a Motion for Attorneys' Fees (Docket Nos. 80 and 83), a renewed 22-page opposition and supplemental brief related to certain defendants' Motion to Dismiss (Docket Nos. 96 and 107), a five-page Memorandum and six-page Reply seeking leave to amend (Docket Nos. 153 and 157), a ten-page Emergency Motion for Protective Order (Docket No. 185), a ten-page response to the defendants' Motion to Quash, attaching a 26-page declaration by plaintiff's counsel (Docket No. 212), a fourteen-page Memorandum and associated Reply supporting a request to reclassify the confidentiality of certain materials (Docket Nos. 218 237), a 26-page Response to the defendants' Motion to Compel certain discovery responses (Docket No. 222), a 16-page opposition brief concerning the defendants' request for fees (Docket No. 257), a 14-page opposition to the defendants' Motion for Sanctions (Docket No. 271), an 18-page Memorandum and 9-page Reply in support of a motion seeking further leave to amend (Docket No. 278), a 15-page opposition to a motion to exclude one of the plaintiff's experts (Docket No. 326), a 15-page opposition to a motion to exclude a second expert (Docket No. 327), a nine-page Motion for Reconsideration of an order by the Magistrate Judge (Docket No. 330), a 14-page Motion for Reconsideration of a second order by the Magistrate Judge (Docket No. 331), a 3-page Motion for Reconsideration of a third order by the Magistrate Judge (Docket No. 332), a 53-page opposition to the defendants' Motion for Summary Judgment (Docket No. 340), a 56-page response to the defendants' statement of facts with over 1700 pages of supporting evidentiary materials (Docket No. 342), a 13-page Motion for Review of an order by the Magistrate Judge (Docket No. 348), and an 11-page response and a separate 10-page response to the defendants' Motion to Strike certain materials filed by the plaintiffs in opposition to the defendants' Motion for Summary Judgment (Docket Nos. 362 and 366). The plaintiffs'

oversized briefs on appeal to the Sixth Circuit,[19] and filed voluminous post-judgment submissions to this court concerning the taxation of costs.[20] These are not the actions of impoverished parties.

## CONCLUSION

The Magistrate Judge's R&R will be accepted in part and rejected in part. The court will tax costs against the plaintiffs in the amount of $18,396.18.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

counsel also participated in numerous lengthy hearings before the Magistrate Judge concerning discovery disputes. (*See, e.g.*, Docket Nos. 75, 85, 171, 183, 188, 192, and 315).

[19]After the plaintiffs appealed this court's grant of summary judgment to the defendants, the plaintiffs filed a 77-page appellate brief and a 39-page Reply brief to the Sixth Circuit, and requested and received the opportunity for their D.C.-based counsel to present oral argument in Cincinnati, Ohio. *See Samuel Moore, et al. v. Weinstein Co. LLC, et al.*, 12-5715 (6th Cir. appeal docketed Jun. 20, 2012) (appeal Docket Nos. 29, 46, 49, and 72.)

[20]Among other post-judgment filings, the plaintiffs filed an 18-page Objection to the Bill of Costs and a 10-page Reply (Docket No. 387), a 12-page Objection to the Magistrate Judge's R&R (Docket No. 403), and a five-page Motion to Strike the defendant's Response thereto (Docket No. 405).